[Civ. No. 776.   Fifth Dist.   Nov. 20, 1967.]

CESAR CHAVEZ, Plaintiff and Appellant, v. THE MUNIC-
IPAL COURT OF THE VISALIA JUDICIAL DIS-
TRICT OF TULARE COUNTY et al., Defendants and
Respondents\*; THE PEOPLE, Real Party in Interest.

\*The Justice Court for the Porterville Judicial District was also named
as a defendant.

Jarvis Miller & Stender and Marvin Stender for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Raymond M. Momboisse, Michael C. Gessford and Jon Schoenberger, Deputy Attorneys General, for Defendants and Respondents and Real Party in Interest.

GARGANO, J.—A criminal complaint was filed in the Justice Court of the Porterville Judicial District charging appellant with the illegal use of a speaker mounted on a vehicle in

violation of Tulare County's Loud Speaker Control Ordinance. Appellant demurred to the complaint and when the court overruled his demurrer he petitioned the Superior Court of Tulare County for a writ of prohibition. Appellant's petition was denied and this appeal followed.[1]

Appellant's petition for a writ of prohibition clearly indicates that the complaint which was filed against him in the justice court does not involve numerous charges, complex issues or involved questions of fact. Moreover, appellant did not, nor does he now, allege unusual facts or circumstances for the extraordinary relief requested. He simply maintains that the ordinance which he is accused of violating is unconstitutional and that he does not have a speedy and adequate remedy at law. In short, he asserts that he should not be required to stand trial in the justice court, and then to appeal to the appellate department of the superior court, if convicted, before he is permitted to challenge the constitutionality of the ordinance which he admittedly violated. Thus, the first question which we must decide is whether the extraordinary remedy of prohibition will lie under these limited circumstances.

It is settled that the constitutionality of a statute or ordinance may be tested by prohibition; the invalidity of legislation goes to the jurisdiction of the court to proceed to try the case (*Whitney* v. *Superior Court*, 182 Cal. 114 [187 P. 12]; *Broady* v. *Jennings*, 70 Cal.App. 647 [234 P. 120]). In opposition, however, respondents contend that the extraordinary remedy is available only under unusual circumstances, when it is clear that the petitioner has no plain, speedy or adequate remedy at law. Relying on the rationale of *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460 [171 P.2d 8], and *Dickenson* v. *Municipal Court* (1958) 162 Cal.App.2d 85 [328 P.2d 32], respondents assert that the mere fact that defendant will have to stand trial, with nothing more, is not enough. In *Rescue Army* the court stated: "A remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of the extraordinary writ of prohibition. [Citations omitted.] Experience has shown that most of the meritorious defenses are sustained and most of the unsubstan-

---

[1]The superior court did not deny appellant's petition on the ground that prohibition did not lie. Moreover, in its minute order the court indicates that it agreed with appellant's position that the Tulare ordinance was unconstitutional but felt itself bound by *Haggerty* v. *County of Kings*, 117 Cal.App.2d 470 [256 P.2d 393].

tial constitutional or other objections are weeded out at the proper time on the proper showing during trial or on appeal. These remedies are therefore considered adequate in the usual situations." (28 Cal.2d 466.) In *Dickenson* the appellate court affirmed the trial court's refusal to issue a writ of prohibition restraining a municipal court from proceeding with the prosecution of the petitioner under an alleged unconstitutional ordinance on the ground that prohibition did not lie under the facts of that case.

We do not agree with respondents' contention that prohibition is not available to appellant in this case. In *Hunter* v. *Justice Court* (1950) 36 Cal.2d 315 [223 P.2d 465], the petitioner was charged with a misdemeanor violation in a justice court. Although his petition was denied (for other reasons) the Supreme Court unequivocally stated that prohibition was proper to test the constitutionality of the statute without indicating or suggesting that there were other special facts or circumstances to warrant the relief requested. Moreover, in *Moore* v. *Municipal Court* (1959) 170 Cal.App.2d 548 [339 P.2d 196], the appellate court held that prohibition was available under circumstances strongly paralleling the instant case. There Justice Tobriner, speaking for the court, distinguished *Dickenson* as follows: "While *Dickenson* v. *Municipal Court* (1958) 162 Cal.App.2d 85 [328 P.2d 32] seemingly reaches an opposite conclusion in that the appellate court upholds the superior court in denying the writ on the ground of adequacy of remedy, the court proceeds to point out: 'It may also be reasonably inferred that where, as here, there are several complaints and charges, *questions of fact* may be involved and the defense of unconstitutionality of one section of the ordinance may be available as to some of the charges and not as to the others. These matters can be considered and decided during a trial or on an appeal.' (Italics added; p. 89.) The instant case raises no questions of fact." (170 Cal.App.2d at p. 553.)

We shall now direct our attention to the constitutionality of the Tulare County ordinance. This ordinance, which is a part of the Tulare County Ordinance Code, provides in pertinent part:

"SECTION 3331. PERMIT REQUIRED: It shall be unlawful for any person, other than law enforcement and governmental agencies, to use a speaker mounted upon a vehicle for the purpose of giving instructions, directions, talks, addresses or lectures to any persons or assemblage upon or over any highway without first obtaining a permit therefor as hereinafter provided.

"<sub></sub> . . . . . . . . . . . . . .

"SECTION 3333. APPLICATION FOR PERMIT: Any person desiring such a permit shall make a written, verified application therefor upon a form which shall be furnished by the Clerk of the Board of Supervisors. Said application shall contain the following information:

(a) The name and address of the person applying for the permit, and if such person is acting as an agent for a club, association, partnership or corporation, the name and the business address of such club, association, partnership or corporation.

(b) The time and place the speaker is to be used.

(c) To whom the address, talk, lecture, direction or instruction is to be given.

(d) The purpose for which the address, talk, lecture, direction or instruction is to be given.

(e) The license number and description of the vehicle or vehicles to be so used.

(f) If said speaker is an electrical amplifier, the rated output of said amplifier in watts.

"SECTION 3334: FILING APPLICATION: Said application shall be filed with the Clerk of the Board of Supervisors. The Board of Supervisors shall consider said application at its next regular meeting, and shall hear any evidence offered in connection with said application at that time.

"SECTION 3335: CONSIDERATION OF APPLICATION BY BOARD: The Board of Supervisors shall grant said permit at said time, unless there is presented to the Board, at the time said permit is under consideration, substantial and convincing evidence of a clear and present danger that the granting of said permit will result in the obstruction of the orderly movement of traffic or the peaceful passage or presence of persons to, over or upon the public highways and other public places, or will result in disorderly or unlawful conduct, unlawful injury of persons, destruction of life or property, or an invasion of the right of privacy, or will result in tending to incite crime or in threatening the overthrow of the lawfully established government by force, in which case said permit may be denied."

Admittedly, the state (and its subdivisions) has the sovereign right to protect its citizens and possesses wide discretion when it exercises its police power in this respect (*City of El Paso* v. *Simmons*, 379 U.S. 497 [13 L.Ed.2d 446, 85 S.Ct. 577]). In fact, the very existence of police power imposes

upon the state the duty to take adequate steps to preserve the peace and to protect the lives, privacy and property of its residents (*Thornhill* v. *Alabama*, 310 U.S. 88 [84 L.Ed. 1093, 60 S.Ct. 736]). ▮ Thus, its statutes involving the police power may be declared unconstitutional only when they are arbitrary or unreasonable attempts to interfere with the basic rights guaranteed by the United States Constitution. As the United States Supreme Court said in *Cox* v. *Louisiana*, 379 U.S. 536, 554 [13 L.Ed.2d 471, 484, 85 S.Ct. 453]: "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy."

In addition the public does not have unlimited or unrestricted rights in the use of the public highways. It acquires only the right of way and the incidents necessary to enjoy such right, subject to reasonable regulation. Thus, in this state, by legislative declaration, the county board of supervisors has control and custody of the county's highways and may enact and enforce ordinances and regulations for the maintenance, protection, supervision, management, control or use of such highways (*Las Posas Water Co.* v. *County of Ventura*, 97 Cal.App. 296 [275 P. 817]; Sts. & Hy. Code, § 942). Moreover, the board's ordinances and regulations are not necessarily inconsistent with the civil liberties guaranteed by the United States Constitution even though they impinge on these liberties. To the contrary, as the United States Supreme Court said in *Cox* v. *New Hampshire*, 312 U.S. 569, 574 [85 L.Ed. 1049, 1054, 61 S.Ct. 762, 133 A.L.R. 1396]: "The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection." And in *Kovacs* v. *Cooper*, 336 U.S. 77, 87 [93 L.Ed. 513, 522, 69 S.Ct. 448, 10 A.L.R.2d 608], the high court

stated that it is "a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities."

■ It is therefore manifest that the board of supervisors of a county may by ordinance regulate the use of loud speakers or other sound emitting devices on county highways as long as the ordinance is a reasonable exercise of the police power and does not establish an arbitrary prior restraint on the exercise of the rights guaranteed by the United States Constitution. Conversely, however, such ordinances are invalid if they unreasonably interfere with civil liberties or if they do not contain sufficiently precise standards which would insure uniform and equal application.

In *Saia* v. *New York,* 334 U.S. 558 [92 L.Ed. 1574, 68 S.Ct. 1148] the United States Supreme Court struck down a municipal ordinance which prohibited the use of a loud speaker without a permit issued by the chief of police. The court said: "To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted. The ordinance therefore has all the vices of the ones which we struck down in *Cantwell* v. *Connecticut,* 310 U.S. 296 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352]; *Lovell* v. *Griffin,* 303 U.S. 444 [82 L.Ed. 949, 58 S.Ct. 666]; and *Hague* v. *Committee for Industrial Organization,* 307 U.S. 496 [83 L.Ed. 1423, 59 S.Ct. 954]." (334 U.S. at p. 560 [92 L.Ed. at p. 1577].) The court also stated:

"Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled. But to allow the police to bar the use of loudspeakers because their use can be abused is like barring radio receivers because they too make a noise. The police need not be given the power to deny a man the use of his radio in order to protect a neighbor against sleepless nights. The same is true here.

"Any abuses which loud-speakers create can be controlled by narrowly drawn statutes." (*Saia* v. *New York,* 334 U.S. 558, 562 [92 L.Ed. 1574, 1578, 68 S.Ct. 1148].)

In *Kunz* v. *New York,* 340 U.S. 290 [95 L.Ed. 267, 71 S.Ct. 312] the Supreme Court declared unconstitutional an ordinance which made it unlawful to hold public worship meetings on the streets without obtaining a permit because the

ordinance gave the city police commissioner the discretionary power to control, in advance, the rights of citizens to hold public worship meetings on the streets.

In *Hague* v. *Committee for Industrial Organization* (1939) 307 U.S. 496 [83 L.Ed. 1423, 59 S.Ct. 954], the Supreme Court found invalid a Jersey City ordinance which read in part as follows: "The Director of Public Safety is hereby authorized to refuse to issue said permit when, after investigation of all of the facts and circumstances pertinent to said application, he believes it to be proper to refuse the issuance thereof; provided, however, that said permit shall only be refused for the purpose of preventing riots, disturbances or disorderly assemblage." (307 U.S. at p. 502, Note 1 [83 L.Ed. 1430].) The court stated:

"It [ordinance] does not make comfort or convenience in the use of streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent 'riots, disturbances or disorderly assemblage.' It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs for the prohibition of all speaking will undoubtedly 'prevent' such eventualities." [307 U.S. at p. 516 [83 L.Ed. at p. 1437].)

██ We have carefully reviewed the Tulare County ordinance with these salutary principles in mind and conclude that the ordinance is unconstitutional.

First, under the ordinance no one can use a loud speaker on the county highways, which may be the only feasible way to communicate with certain persons, without first applying to the county board of supervisors. And yet the board, without following objective standards of any kind, may not only deny the permit if it predetermines that there is a clear and present danger that its issuance will *probably* result in such dire and disruptive consequences as the destruction of life or property or a threat to overthrow the government by force, but also if it predetermines that the issuance of the permit will *probably* result in such lesser evils as (1) the obstruction of the orderly movement of traffic or (2) the peaceful passage or presence of persons to, over or upon the public highways and other public places or (3) disorderly conduct or (4) an invasion of the right of privacy.

Thus, although more subtly worded, the ordinance contains the same vice as the ordinance which was struck down in *Hague* v. *Committee for Industrial Organization, supra,* 307

U.S. 496. The Tulare ordinance presents great opportunity for discrimination, political preference and the type of censorship that is repugnant to the very concept upon which our free form of government is founded. For example, the "convincing evidence" necessary to prove that there is a clear and present danger that an objectionable activity, such as creating a private nuisance, will probably result from use of a sound truck could include the conjectural effect of a vast range of matters, anything from subject matter to moral character of the applicant, with the ultimate decision founded upon the subjective beliefs of the board members who hear the evidence. In short, "convincing evidence" may have a great deal of meaning when it relates to what happened in the past in order to revoke a permit, but "convincing evidence" of what will happen in the future as the prerequisite to the issuance of a permit under this ordinance can only mean that the members of the board who determine what the evidence shows will happen must rely upon their own belief, viewpoint or prophecy unfettered by objective standards of any kind.

Second, the ordinance makes it possible for the board to purposely engage in delaying tactics which could be extremely detrimental, if not fatal, to the presentation of vital issues in labor disputes, political campaigns and similar national, state or local matters which are by nature transitory. Although the ordinance requires the board to consider the application for a permit at its next regular meeting, there is no time limit for the board's decision. Consequently, from the lack of any such time limit and the vague standards of the ordinance, it is conceivable that the taking of evidence and the board's decision after it has heard the evidence could extend over a prolonged period of time.

In arriving at our decision that the Tulare County ordinance is unconstitutional, we are mindful of the case of *Haggerty* v. *County of Kings* (1953) 117 Cal.App.2d 470 [256 P.2d 393], where the court reached the opposite conclusion when it interpreted an almost identically worded ordinance. We are also cognizant of the salient policy which ordinarily would induce us to follow the decision of a sister appellate court on an issue which has not been decided by our own Supreme Court. However, the paramount public interest which is inextricably connected with the subject matter of the ordinance has impelled us to reconsider the question in light of conditions which have prevailed in this nation during more recent years.

The judgment is reversed with directions to the trial court to issue the writ as prayed for.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied December 13, 1967, and respondents' petition for a hearing by the Supreme Court was denied January 17, 1968. McComb, J., and Burke, J., were of the opinion that the petition should be granted.