[S.F. No. 23006. In Bank. Mar. 28, 1974.]

TERESA A. DULANEY et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO,
Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Charles C. Marson, Joseph Remcho, Peter E. Sheehan and Larry Sleizer for Petitioners.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Respondent and for Real Party in Interest.

## OPINION

**SULLIVAN, J.**—In this proceeding for a writ of prohibition, petitioners, Teresa Dulaney and Joel Shapiro, challenge the constitutionality of section 690 of the Municipal Code of the City and County of San Francisco (City) declaring it unlawful to affix any notice or poster to utility poles unless permission has been obtained from the person owning or controlling such poles and from the City's Department of Public Works (Department).[1] We have concluded that this section violates federal and state constitutional provisions guaranteeing the right of free speech since it operates as a prior restraint on the right of individuals to exercise a form of protected expression but contains no standards whatsoever to guide the City's Department in its decision to grant or deny permission under the section.

The material facts are brief and are not in dispute. On November 16, 1972, petitioners were arrested for posting on a utility pole—either a telephone pole or a City-owned light pole[2]—a notice announcing an anti-war rally and march. It is not alleged that petitioners requested permission to post notices on utility poles from the owner of the poles and the Department. However, petitioners allege on information and belief, and it is not denied by the People, real party in interest herein, that the Department has, in the past, given permission to others to post notices or signs on utility poles under the authority of the ordinance in question.

Complaints were filed in respondent court charging petitioners sepa-

---

[1]Section 690 provides: "It shall be unlawful for any person, firm or corporation to paste, paint, affix or fasten, or cause to be pasted, painted, affixed or fastened on any telegraph, telephone, electric light or lamp pole, or trolley or power pole, any advertisement, bill, notice, card, sign, or advertising device unless permission be obtained from the person, firm or corporation owning or controlling such poles, and from the Department of Public Works."

[2]Petitioners allege that they were arrested for posting a notice on a telephone pole; the People state that it was a City-owned light pole. However, the factual dispute is not of controlling significance in this proceeding since petitioners contend that the ordinance is unconstitutional on its face and not merely as applied. Therefore, we are required to resolve only those issues raised by the language of the enactment itself and not any factual disputes raised by the pleadings. (*Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 865-866 [94 Cal.Rptr. 777, 484 P.2d 945].) Moreover, the ordinance seeks to restrict the posting of notices on either kind of utility pole. Finally, even if it were necessary to resolve this factual dispute, we could do so in accordance with the allegations of the complaints—which charge petitioners with having posted a notice on an "electric light pole"— since their right to extraordinary relief depends on their demonstrating that the proceedings initiated by the complaints are in excess of the court's jurisdiction. (*Mandel* v. *Municipal Court* (1969) 276 Cal.App.2d 649, 656-657 [81 Cal.Rptr. 173].)

rately with violating section 690 of the San Francisco Municipal Code which makes it unlawful for any person to post a notice on utility poles unless he has first obtained the permission of the person owning or controlling the poles and of the Department. Claiming that their conduct does "not constitute a public offense" because the ordinance in question improperly infringed on their right of expression guaranteed by the United States Constitution (1st Amend.) and the California Constitution (art. I, § 9), petitioners demurred to the respective complaints. (Pen. Code, § 1004, subd. 4.) The demurrers were overruled. Petitioners then filed in the superior court a petition for a writ of prohibition seeking to restrain respondent court from further proceedings in the criminal actions brought against them. The petition was denied. Upon application to this court, we issued an alternative writ of prohibition and a stay of the proceedings below.

In their return to the alternative writ, the People allege in effect that this is not an appropriate case for extraordinary relief and that the provision in question is not unconstitutional on its face but is a proper exercise of the City's police power. Otherwise, they admit the allegations contained in the petition.[3]

Preliminarily, we must determine whether this is a proper case for extraordinary relief. ■ Where a criminal statute or ordinance sought to be enforced is alleged to be unconstitutional on its face, a petition for a writ of prohibition is an appropriate method of seeking relief. (*Dillon* v. *Municipal Court, supra,* 4 Cal.3d 860, 866, fn. 6; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 687 [68 Cal.Rptr. 721, 441 P.2d 281]; *Whitney* v. *Municipal Court* (1962) 58 Cal.2d 907, 911 [27 Cal.Rptr. 16, 377 P.2d 80]; *Hunter* v. *Justice's Court* (1950) 36 Cal.2d 315, 323 [223 P.2d 465]; *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 462-463 [171 P.2d 8]; *Mandel* v. *Municipal Court, supra,* 276 Cal.App.2d 649, 655-656; *Chavez* v. *Municipal Court* (1967) 256 Cal.App.2d 149, 151-152 [64 Cal.Rptr. 76]; *Moore* v. *Municipal Court* (1959) 170 Cal. App.2d 548, 551-554 [339 P.2d 196]; see *Perrine* v. *Municipal Court*

---

[3]The return to the alternative writ, which must conform to the rules applied to an answer in a civil action (Code Civ. Proc., §§ 1089, 1105, 1109; Cal. Rules of Court, rule 56(c); 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 158, p. 3925; Cal. Civil Writs (Cont. Ed. Bar 1970) § 15.6, pp. 383-384), fails to expressly deny any of the allegations in the petition; however, the return sets forth allegations in an affirmative manner which, if also controverting, are deemed to place the allegations of the petition at issue. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 884, p. 2480.) Apart from the fact that the People have affirmatively stated that this is not a proper case for extraordinary relief and that the ordinance in question is constitutionally valid, the return controverts only one other allegation in the petition, creating an issue of fact not determinative in this proceeding. (See fn. 2, *ante.*)

(1971) 5 Cal.3d 656, 665 [97 Cal.Rptr. 320, 488 P.2d 648], cert. den., 404 U.S. 1038 [30 L.Ed.2d 729, 92 S.Ct. 710]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 40, 58; Cal. Civil Writs (Cont. Ed. Bar 1970) § 10.53, p. 241.)[4]

■ However, the People assert that a writ is inappropriate here because a foundational fact necessary for resolution of the constitutional issue is in dispute. (See Code Civ. Proc., §§ 1090, 1105.) No factual finding has been made, the People explain, that the City has actually issued permits for posting notices on utility poles under the authority of the provision in question and there is, therefore, no basis for concluding that the City has "opened the forum" by making otherwise unavailable utility poles accessible for posting notices. However, unless this is an issue of fact "affecting the substantial rights of the parties" (Code Civ. Proc., §§ 1094, 1105), we should proceed to consider the merits. (See *Dillon* v. *Municipal Court, supra,* 4 Cal.3d 860, 865; cf. *In re Berry* (1968) 68 Cal.2d 137, 141, fn. 2 [65 Cal.Rptr. 273, 436 P.2d 273], stating a similar rule on a petition for writ of habeas corpus.)

We reject the People's argument for two reasons. First, even assuming that utility poles need not be made available as a forum for exercising First Amendment rights, the ordinance on its face makes such poles accessible for posting notices where the consent of the owner and the Department is obtained. Contrary to the People's claim, the ordinance, therefore, has "opened the forum." (For examples of "opening the forum," see *Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276] (privately owned sidewalks and streets); *Wirta* v. *Alameda-Contra Costa Transit Dist.* (1967) 68 Cal.2d 51, 54-55 [64 Cal.Rptr. 430, 434 P.2d 982] (motor coaches); *Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 545-546 [171 P.2d 885] (school building).) Whether or not the City has actually permitted others to post notices on utility poles is not, therefore, an issue "affecting the substantial rights of the parties." (Code Civ. Proc., § 1094.) Second, even if it were necessary, as the People argue, to establish the foundational fact of "opening of the forum" by previous issuance of permits under the ordinance, it appears that the People

---

[4]It is also settled that petitioners have standing to attack the constitutional validity of the ordinance which they are charged with having violated even though they have failed to allege that they attempted to comply with its permit requirement. (*Dillon* v. *Municipal Court, supra,* 4 Cal.3d 860, 866, fn. 6, and cases collected therein; see also *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 687-688.) "Standing is recognized in such a situation because of the dangers inherent in tolerating, in the realm of the First Amendment, the existence of a penal statute susceptible of sweeping and improper application. [Citations.]" (*Burton* v. *Municipal Court, supra,* 68 Cal.2d at p. 688.)

have admitted such "opening of the forum" by failing to deny petitioners' allegations that the Department has previously issued permits. (See *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 865, fn. 5 [34 Cal.Rptr. 251].)

We turn to the merits. Petitioners allege that the ordinance in question is an invalid prior restraint on freedom of speech because it establishes a licensing scheme that is "totally devoid of narrow, definite and objective standards."[5] (*Dillon* v. *Municipal Court, supra,* 4 Cal.3d at p. 866, fn. omitted.) The attack is directed only to the validity of the ordinance on its face—not as applied in this case—because it attempts to restrict or regulate the posting of notices or other printed material on utility poles.[6]

A threshold question which we must resolve is whether the ordinance in question attempts to regulate First Amendment expression. We note by means of a licensing scheme the ordinance regulates the *posting* of notices on utility poles but not their content. ■ However, the First Amendment protects not only the content but also the dissemination of written material. (*Martin* v. *Struthers* (1943) 319 U.S. 141, 143 [87 L.Ed. 1313, 1316-1317, 63 S.Ct. 862]; *Lovell* v. *Griffin* (1938) 303 U.S. 444, 452 [82 L.Ed. 949, 954, 58 S.Ct. 666]; *Van Nuys Pub. Co.* v. *City of Thousand Oaks* (1971) 5 Cal.3d 817, 821 [97 Cal.Rptr. 777, 489 P.2d 809].) The posting of written material is not unlike other forms of protected expression, such as picketing (see *Police Department of Chicago* v. *Mosley* (1972) 408 U.S. 92 [33 L.Ed.2d 212, 92 S.Ct. 2286] (decided on equal protection grounds); *Cox* v. *Louisiana* (1965) 379 U.S. 536, 542 [13 L.Ed.2d 471, 476-477, 85 S.Ct. 453]; *Cox* v. *New Hampshire* (1941) 312 U.S. 569, 575-576 [85 L.Ed. 1049, 1053-1054, 61 S.Ct. 762, 133 A.L.R. 1396]); and the distribution or circulation of printed matter (*Talley* v. *California* (1960) 362 U.S. 60 [4 L.Ed.2d 559, 80 S.Ct. 536]; *Schneider* v. *State* (1939) 308 U.S. 147 [84 L.Ed. 155, 60 S.Ct. 146]; *Lovell* v. *Griffin, supra,* 303 U.S. 444; *Van Nuys Pub. Co.* v. *City of Thousand Oaks, supra,* 5 Cal.3d 817.) ■ Accordingly, we are of the view that

---

[5]Petitioners also assert that the ordinance is invalid because it provides no method of "prompt judicial recourse" in the event their request for a permit is refused. We agree, however, that the ordinance is invalid in the first instance because it establishes a standardless licensing scheme for protected expression. Therefore, we do not reach the question whether it must also provide for an expeditious method of judicial review.

[6]Since we have concluded that the ordinance makes utility poles available as a forum for posting notices and handbills (see text, *infra*), we need not consider the question under what circumstances public property *must* be made available, if at all, as a forum for First Amendment activities. (See *Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d 51, 54.)

the posting of notices on utility poles is a form of expression coming within the protective umbrella of the First Amendment.

In *Dillon* v. *Municipal Court, supra,* 4 Cal.3d 860, involving a similar challenge to a city ordinance requiring permits for parades and demonstrations, we summarized the principles governing the constitutionality of restrictions on protected expression. ██ We there observed: "In determining whether a statute regulating speech violates the First Amendment, we must weigh the state's interest in maintaining peace and order in the streets and other public places against the individual's right to freedom of speech and assembly. When this balance is struck, statutes requiring licenses for [the exercise of First Amendment rights] will not offend the Constitution if they regulate only the time, place, manner and duration [of such expression] and if they are fairly administered by officials within the range of narrowly limited discretion. On the other hand, any procedure which allows licensing officials wide or unbounded discretion in granting or denying permits is constitutionally infirm because it permits them to base their determination on the content of the ideas sought to be expressed." (4 Cal.3d at pp. 869-870.)

Moreover, the "quality of the governmental interest" in preserving peace and order must be "important or substantial" (*United States* v. *O'Brien* (1968) 391 U.S. 367, 376-377 [20 L.Ed.2d 672, 679-680, 88 S.Ct. 1673]) or "compelling" (*Sherbert* v. *Verner* (1963) 374 U.S. 398, 403 [10 L.Ed. 2d 965, 969-970, 83 S.Ct. 1790]; *N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 438 [9 L.Ed.2d 405, 421, 83 S.Ct. 328]). However, "even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." (*Shelton* v. *Tucker* (1960) 364 U.S. 479, 488, fn. omitted [5 L.Ed.2d 231, 237, 81 S.Ct. 247].) ██ Therefore, a statute or ordinance that operates as a prior restraint on the exercise of First Amendment freedoms must have "narrow, objective, and definite standards to guide the licensing authority." (*Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147, 151 [22 L.Ed.2d 162, 167, 89 S.Ct. 935].) "Precision of regulation must be the touchstone . . . ." (*N.A.A.C.P.* v. *Button, supra,* 371 U.S. 415, 438; see also *Interstate Circuit* v. *Dallas* (1968) 390 U.S. 676, 682 [20 L.Ed.2d 225, 230-231, 88 S.Ct. 1298].)

The guidelines we enunciated in *Dillon,* fashioned from a long line of United States Supreme Court cases,[7] reflect a careful and delicate process

---

[7]See, e.g., *Lovell* v. *Griffin, supra,* 303 U.S. 444; *Hague* v. *C.I.O.* (1939) 307 U.S. 496 [83 L.Ed. 1423, 59 S.Ct. 954]; *Schneider* v. *State, supra,* 308 U.S. 147;

of balancing the right of individuals to engage in protected expression against the interest of the community in preserving order. (See *Schneider* v. *State, supra,* 308 U.S. 147, 161 [84 L.Ed. 155, 164-165].) ▮ This process begins with the basic premise that generally speaking the government may not regulate the content or subject matter of First Amendment freedoms. (*Police Department of Chicago* v. *Mosley, supra,* 408 U.S. 92, 99 [33 L.Ed.2d 212, 218-219]; *Cohen* v. *California* (1971) 403 U.S. 15, 24 [29 L.Ed.2d 284, 293, 91 S.Ct. 1780].) As the high court has pointed out, to restrict the content of expression would be to erode the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 270 [11 L.Ed.2d 686, 701, 84 S.Ct. 710, 95 A.L.R. 2d 1412]; see also *Police Department of Chicago* v. *Mosley, supra,* 408 U.S. 92.)

On the other hand, restrictions on the time, place and manner of expression are justified because of the public interest in maintaining "peace and good order." (*Shuttlesworth* v. *Birmingham, supra,* 394 U.S. 147, 152 [22 L.Ed.2d 162, 168].) Indeed, one of the purposes of regulating the manner of exercising First Amendment freedoms is the very preservation of free speech itself. As stated in *Cox* v. *Louisiana, supra,* 379 U.S. 536, 554 [13 L.Ed.2d 471, 484], "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." Accordingly, the government's interest in order and the individual's interest in freedom of expression must be properly weighed so that the scope and effect of a statute or ordinance that restricts the time, place, or manner of expression are no greater than the legitimate interest the statute or ordinance seeks to advance. At the same time, we are mindful that the most significant factor in determining the validity of a governmental intrusion is a "zealous

*Cantwell* v. *Connecticut* (1940) 310 U.S. 296 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352]; *Jones* v. *Opelika* (1942) 316 U.S. 584 [86 L.Ed. 1691, 62 S.Ct. 1231, 141 A.L.R. 514]; *Largent* v. *Texas* (1943) 318 U.S. 418 [87 L.Ed. 873, 63 S.Ct. 667]; *Marsh* v. *Alabama, supra,* 326 U.S. 501; *Tucker* v. *Texas* (1946) 326 U.S. 517 [90 L.Ed. 274, 66 S.Ct. 274]; *Saia* v. *New York* (1948) 334 U.S. 558 [92 L.Ed. 1574, 68 S.Ct. 1148]; *Niemotko* v. *Maryland* (1951) 340 U.S. 268 [95 L.Ed. 267, 71 S.Ct. 325]; *Kunz* v. *New York* (1951) 340 U.S. 290 [95 L.Ed. 280, 71 S.Ct. 312]; *Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495 [96 L.Ed. 1098, 72 S.Ct. 777]; *Poulos* v. *New Hampshire* (1953) 345 U.S. 395 [97 L.Ed. 1105, 73 S.Ct. 760, 30 A.L.R.2d 987]; *Staub* v. *City of Baxley* (1958) 355 U.S. 313 [2 L.Ed.2d 302, 78 S.Ct. 277]; *Cox* v. *Louisiana, supra,* 379 U.S. 536; *Interstate Circuit* v. *Dallas, supra,* 390 U.S. 676; *Shuttlesworth* v. *Birmingham, supra,* 394 U.S. 147.

solicitude for rights falling within the protection of the First Amendment." (*Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 691.)

 Having these principles in mind, we proceed to examine the ordinance in the instant case. Section 690 of the San Francisco Municipal Code declares it "unlawful . . . to paste, paint, affix, or fasten . . . on any [utility pole], any advertisement, bill, notice, card, sign, or advertising device, unless permission be obtained" from the person or firm owning or controlling the pole and from the Department. As previously noted, this provision makes utility poles available for posting notices or other printed matter: it also requires the prior permission of the person owning or controlling the pole and of the Department. It thus establishes a licensing scheme that empowers the City to allow or forbid expressive conduct protected by the First and Fourteenth Amendments.

The ordinance on its face fails to state the conditions that must be met before a permit will be granted or under what circumstances permission will be denied. It suffers from the same infirmities found in the ordinance in *Dillon* v. *Municipal Court, supra,* 4 Cal.3d 860, 863. The ordinance in *Dillon* declared it unlawful "to obstruct the free use of any street or sidewalk," but provided an exception for parades and demonstrations. A permit for these activities "may" be given, the ordinance stated, "provided [certain] conditions are met." Those conditions included, among other things, the filing of an application stating the name of the applicant, the date and time of the activity, and the route intended. Additionally, the ordinance provided that where a permit was not issued, "the applicant shall have the right to appeal to the City Council." However, as in the instant case, the ordinance failed to state under what circumstances a permit would be denied or granted. Our criticism of the *Dillon* ordinance applies equally here: "The glaring and fatal defect in the section, however, is that it contains no standards whatsoever—let alone standards designed to be 'narrow, objective and definite'—to guide and govern the city officials in their decisions to grant or deny permits." (4 Cal.3d at p. 870.) The absence of narrowly drawn standards leaves the licensing authorities free to control the content of speech. This they may not do.

The People attempt to justify the ordinance on several bases none of which we find tenable.

They first argue that it is in effect a trespass ordinance because it is intended to restrict the posting of notices on utility poles located on private property only. They refer to one section of the City's code which regulates the posting of notices on any property owned by the City (§ 679) and

to another section (§ 678) which regulates curbs, lampposts, hitching posts, hydrants, bridges, trees and other miscellaneous objects. Since the subject of utility poles might be encompassed by one of these sections, which appear to regulate the use of *public* property, the People ask us to assume that the ordinance in question is directed to utility poles on *private* property. An analogous contention was made in *Talley* v. *California, supra,* 362 U.S. 60, where the ordinance under attack prohibited the distribution of any handbill not containing the names and addresses of its author and such distributor. Attempting to justify such requirements, the state argued that the purpose of the ordinance was merely to identify those responsible for fraud, false advertising and libel. Rejecting this argument, the Supreme Court declared: "Yet the ordinance is in no manner so limited. . . . Therefore we do not pass on the validity of an ordinance limited to prevent these or any other supposed evils." (362 U.S. at p. 64 [4 L.Ed.2d at p. 562].)

Similarly, in the case at bench, we note that the ordinance under attack refers to a variety of poles falling within the general class of utility poles and obviously intended to be used for different purposes but that it in no way limits its application according to the location of the poles on public or private property. ■ The fact that an exercise of speech occurs on private property does not end the inquiry; for example, the exercise of speech at a railway station, privately owned but open to the general public, has been given First Amendment protection. (*In re Hoffman* (1967) 67 Cal.2d 845, 850 [64 Cal.Rptr. 97, 434 P.2d 353].) In any event, we decline to make the assumption suggested by the City since the ordinance on its face regulates the use of both public and private property.

We reject for the same reason the People's argument that the ordinance is designed to regulate purely commercial advertising not within the ambit of free speech and thus that it is not violative of constitutional guarantees. (See, e.g., *Breard* v. *Alexandria* (1951) 341 U.S. 622, 641-642 [95 L.Ed. 1233, 1247-1248, 71 S.Ct. 920, 35 A.L.R.2d 335] (door-to-door solicitation of business); *Valentine* v. *Chrestensen* (1942) 316 U.S. 52, 54 [86 L.Ed. 1262, 1265, 62 S.Ct. 920] (distribution of commercial handbills in public streets); *Wirta* v. *Alameda-Contra Costa Transit Dist.,* *supra,* 68 Cal.2d 51, 57.) The People point out that section 690 is contained in a chapter (ch. VIII, art. 10) of the City's code entitled "Regulations for Advertising." However the ordinance is not so limited. It prohibits not only the posting of "any advertisement" or "advertising device" but also of any "bill, notice, card [or] sign," no matter what its content or purpose.

But in any event, argue the People, the ordinance must be upheld since it promotes substantial governmental interests of the City while imposing only "incidental limitations on First Amendment freedoms." (*United States v. O'Brien, supra,* 391 U.S. 367, 376 [20 L.Ed.2d 672, 679-680].) They rely on the guidelines in *O'Brien* signifying that "a governmental regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*Id.* at p. 377 [20 L.Ed.2d at p. 680].) Under this aegis, the following governmental interests are proffered: The prevention of littering because signs remain and accumulate on poles (citing *Schneider v. State, supra,* 308 U.S. 147)[8] and effect a "sensory pollution" now subject to restraint under forward-looking policies of environmental control; the protection of the "unwilling viewer" (citing *Rowan v. Post Office Dept.* (1970) 397 U.S. 728 [25 L.Ed.2d 736, 90 S.Ct. 1484])[9] particularly in "quiet, comfortable residential lanes"; and in general the promotion of "public health, safety, morals or general welfare."

The People's argument is beside the point. The issue raised in these proceedings is not whether the ordinance bears a rational relationship to a legitimate governmental interest for that seems to have been taken for granted at the start. Indeed it is undisputed that the purpose of the ordinance is to promote the general welfare of the city whether that be defined in terms of the prevention of littering or of the unsightliness of utility poles. The issue here is whether after making the poles available for the posting of signs and thus for the exercise of First Amendment rights, the City may regulate their use as such by means of a standardless licensing scheme "which allows licensing officials wide or unbounded discretion in granting or denying permits" (*Dillon v. Municipal Court, supra,* 4 Cal.3d at p. 869), thereby effecting an invalid prior restraint on freedom of speech. We have already resolved this issue and concluded that because of such a standardless licensing system the ordinance must fall as an impermissible abridgement of free speech.

---

[8] In *Schneider* the court struck down several ordinances restricting the right to distribute handbills on streets, sidewalks and other public areas. Conviction under the ordinances had been affirmed by state courts on the basis that their purpose was to prevent littering. The Supreme Court stated (p. 162 [84 L.Ed. p. 165]), "the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it."

[9] *Rowan* affirmed the right of "every householder to exercise control over unwanted mail" (p. 736 [25 L.Ed.2d p. 742]) and upheld the validity of a federal statute to that end.

 To recapitulate, we hold that section 690 of the San Francisco Municipal Code is unconstitutional on its face in that it constitutes an invalid prior restraint on the exercise of free speech and thus violates the First and Fourteenth Amendments of the United States Constitution and article I, section 9 of the California Constitution.[10] Since it is unconstitutional, respondent court lacks jurisdiction to proceed with the criminal actions against petitioners.

Let a peremptory writ of prohibition issue as prayed for.

Wright, C. J., Tobriner, J., and Mosk, J., concurred.

**BURKE, J.** — I dissent. As I pointed out in my dissenting opinion in a similar case, *Van Nuys Pub. Co.* v. *City of Thousand Oaks,* 5 Cal.3d 817, 829 [97 Cal.Rptr. 777, 489 P.2d 809] [anti-littering ordinance held invalid], the courts are obligated to sustain the constitutionality of municipal police power regulations to the extent consistent with constitutional requirements. In my view, rather than invalidate the instant ordinance in its entirety, we should construe it in such a manner as to avoid constitutional objections.

First of all, as I explained in *Van Nuys,* we properly may construe ordinances of this nature as applying only to "nonprotected, commercial material, thereby saving the constitutionality of the ordinance in its most common application. [¶] The authorities uniformly recognize that commercial soliciting or advertising may be regulated by ordinances of the type involved herein. [Citations.]" (5 Cal.3d at pp. 830-831.)

Secondly, even as to so-called "protected" materials, we could employ the doctrine of severance to strike out only the offensive portion of section 690, namely, the requirement of prior consent from City's Department of Public Works. The cases indicate that the courts may effect a severance in order to sustain an otherwise proper ordinance so long as severance would not defeat or frustrate the probable intent underlying the

[10]It is clearly not tenable, nor do the People make any claim, that the ordinance can be upheld by severing the portion of the statute requiring the consent of the Department. The doctrine of severance cannot be applied where an invalid provision enters "entirely into the scope and design of the law." (*People* v. *Lewis* (1939) 13 Cal.2d 280, 284 [89 P.2d 388].) Having in mind the asserted interests sought to be advanced by the ordinance (see text accompanying fns. 8 and 9, *ante*), it is apparent that the permission of the Department is essential to the operation of the statute and is an inextricable part of the law. Under these circumstances, the invalidity of the standardless licensing scheme infects the entire section; to arbitrarily eliminate the clause requiring the consent of the Department would be a futile act. (See *In re Berry, supra,* 68 Cal.2d 137, 156-157.)

ordinance. (*Hamer* v. *Town of Ross,* 59 Cal.2d 776, 789 [31 Cal.Rptr. 335, 382 P.2d 375]; *People* v. *McCaughan,* 49 Cal.2d 409, 416 [317 P.2d 974]; *Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536, 555 [171 P.2d 885].)

Thus, were we to invalidate only that portion of section 690 which requires prior governmental consent, the remaining ordinance would constitute a valid regulation imposing sanctions for trespass on private property without the owner's prior consent. I can conceive of no serious constitutional objection to the operation of such an ordinance. Moreover, it seems evident that the framers of section 690 would prefer that the section operate on this limited basis rather than be invalidated in its entirety. Under such circumstances, application of the doctrine of severance would appear both appropriate and imperative, given our obligation to sustain the validity of legislation to the extent constitutionally permissible.

McComb, J., and Clark, J., concurred.