[No. B018903. Second Dist., Div. Six. May 14, 1986.]

RAY GONZALES, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
CITY OF SANTA PAULA et al., Real Parties in Interest.

1120

**COUNSEL**

Richard A. Weinstock for Petitioner.

No appearance for Respondent.

Phillip H. Romney for Real Parties in Interest.

**OPINION**

**ABBE, J.**—Petitioner filed this writ of mandate action seeking relief from the denial of his request on constitutional grounds to enjoin the enforcement of the City of Santa Paula's (City) "sign" ordinance, enacted on November 5, 1985.[1] He challenges the constitutionality of the ordinance, both on its face and as applied to him. The City confiscated four signs, critical of city government, petitioner had placed on his private vehicle and had legally parked on a state highway in the City.

Petitioner asserts that he and his fellow citizens are deprived of the constitutional rights of freedom of speech, assembly and petition for redress of grievances under article I, sections 2 and 3 of the California Constitution and parallel provisions in the United States Constitution. He further alleges the ordinance deprives him and the public of due process and equal protection under the Fourteenth Amendment to the United States Constitution and under article I, section 7 of the California Constitution in that the ordinance arbitrarily and capriciously discriminates against those people displaying certain temporary signs as opposed to permanent ones. Moreover, he claims the ordinance impermissibly prohibits certain political signs, and other noncommercial opinions, while permitting similar commercial signs.

Petitioner contends the superior court erred in denying his request for a preliminary injunction to halt the enforcement of this ordinance. We agree.

We find this Santa Paula sign ordinance to be unconstitutional on its face. This holding makes it unnecessary to consider some of appellant's other contentions.

---

[1] Santa Paula's sign ordinance appears as appendix A at the end of this opinion.

The ordinance impermissibly bans certain temporary, noncommercial signs, announcing or pertaining to specific events, while allowing permanent signs and various commercial signs. By opening a traditional public forum to the display of some signs, the City cannot justify its purported interests in aesthetics and traffic safety by banning certain other, noncommercial ones. No adequate alternative forums exist.

Furthermore, the City has improperly attempted to restrain the liberty and property rights of individuals to display certain noncommercial messages in the manner they see fit on their private property.

Other infirmities of the ordinance include its prior restraint on banners and its failure to accord prior notice of violation.

This ordinance is riddled with constitutional infirmities on its face. It is impossible to ferret out any valid, severable aspects of it and, therefore, no part of it can be saved. (*Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 339-340 [38 Cal.Rptr. 625, 392 P.2d 385].)

*Propriety of Proceeding by Writ*

Speedy resolution by means of a petition for writ of mandate is appropriate where, as here, denial of injunctive relief threatens immediate infringement on the exercise of First Amendment rights to free speech. Unnecessarily protracted litigation restricts the exercise of these rights. (*Reader's-Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 251 [208 Cal.Rptr. 137, 690 P.2d 610], citing *Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672 [150 Cal.Rptr. 258, 586 P.2d 572], (cert. den. (1979) 441 U.S. 961 [60 L.Ed.2d 1066, 99 S.Ct. 2406]); and *Dombrowski* v. *Pfister* (1965) 380 U.S. 479, 486-487 [14 L.Ed.2d 22, 28-29, 85 S.Ct. 1116].) In such situations, a writ proceeding is warranted at the pleading stage. (*Environmental Planning & Information Council* v. *Superior Court* (1984) 36 Cal.3d 188, 190 [203 Cal.Rptr. 127, 680 P.2d 1086].)

We note this is an election year. (Evid. Code, § 452.) Threatened enforcement of this ordinance creates an ominous, chilling effect on the free exercise of political speech by petitioner and the public. (*Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 656, 661 [119 Cal.Rptr. 468, 532 P.2d 116].) Under these circumstances, we view petitioner's remedy by way of appeal to be inadequate and find this petition for writ of mandate to be appropriate. (*Duran* v. *Cassidy* (1972) 28 Cal.App.3d 574, 578-579 [104 Cal.Rptr. 793].)

*Rules Governing Analysis of Free Speech Cases*

■ There are basic rules governing the analysis of cases involving the right to free exercise of speech. One of them is that the Court of Appeal independently evaluates these actions on a case-by-case basis. *(Sussli v. City of San Mateo* (1981) 120 Cal.App.3d 1, 9 [173 Cal.Rptr. 781] (cert. den. (1981) 454 U.S. 1085 [70 L.Ed.2d 621, 102 S.Ct. 643]).) The significance, if any, of purported governmental interests as a justification for infringement upon the right to free expression varies in light of the nature and function of the particular forum in which it occurs, the specific regulations attached to its exercise and the particular facts of the case.

For example, governmental concern for aesthetics, safety or convenience which might be legitimate interest to support some restriction concerning speech under certain circumstances, such as in a fairgrounds, may be totally insufficient to justify the restriction in a forum such as a street or sidewalk. *(Heffron* v. *Int'l. Soc. for Krishna Consc.* (1981) 452 U.S. 640, 650-651 [69 L.Ed.2d 298, 308-309, 101 S.Ct. 2559].)

We must make a ". . . particularized inquiry into the nature of the conflicting interests at stake here, beginning with a precise appraisal of the character of the ordinance as it affects communication." *(Metromedia Inc.* v. *San Diego* (1981) 453 U.S. 490, 503 [69 L.Ed.2d 800, 812, 101 S.Ct. 2882]; also see 453 U.S. at p. 517 [69 L.Ed.2d at p. 820].) "The relative significance of these interests, and the importance of the challenged regulations to their realization must be considered in determining the validity of the particular regulations. . . ." *(Baldwin* v. *Redwood City* (9th Cir. 1976) 540 F.2d 1360, 1366-1367 (cert. den. (1977) 431 U.S. 913 [53 L.Ed.2d 223, 97 S.Ct. 2173]).) Mere legislative preferences or beliefs regarding matters of public convenience may not support the diminution of such vital rights as the exercise of free speech in our democracy. *(Id.,* at p. 1367, citing *Schneider* v. *Irvington* (1939) 308 U.S. 147, 161 [84 L.Ed. 155, 164, 60 S.Ct. 146].)

■ Another rule of analysis is that where state law affords greater protection to expression of free speech than federal law, state law prevails.

The California Constitution, and California cases construing it, accords greater protection to the expression of free speech than does the United States Constitution. *(Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 903, 907-910 [153 Cal.Rptr. 854, 592 P.2d 341], rehg. den. (May 23, 1979), affd. (1980) 447 U.S. 74, 81, 82, 88-89 [64 L.Ed.2d 741, 751, 752, 756-757, 100 S.Ct. 2035]; accord *People* v. *Chavez* (1980) 26 Cal.3d 334, 351-352 [161 Cal.Rptr. 762, 605 P.2d 401]; *U.C. Nuclear Weapons Labs*

*Conversion Project* v. *Lawrence Livermore Laboratory* (1984) 154 Cal.App.3d 1157, 1163 [201 Cal.Rptr. 837].)

Although the "free speech" provisions of the California and federal Constitutions are similar, they are not the same. The First Amendment to the United States Constitution reads, in pertinent part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." But, article I, section 2 of the California Constitution reads, in pertinent part: "(a) Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." And, article I, section 3 of the California Constitution reads: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."

These provisions of the California Constitution are construed as more protective, definitive and inclusive of rights to expression of speech than their federal counterparts. (*Robins* v. *Pruneyard Shopping Center, supra,* 23 Cal.3d at p. 908, rehg. den. (May 23, 1979), affd. (1980) 447 U.S. at p. 81 [64 L.Ed.2d at p. 751]; *U.C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory, supra,* 154 Cal.App.3d at p. 1163.) The *Robins* court specifically stated that, "[p]ast decisions on speech and private property testify to the strength of 'liberty of speech' in this state."

California law is more solicitous of the right to express oneself, particularly when private property interests and "opened" or private forums are involved. (*Robins* v. *Pruneyard Shopping Center, supra,* 23 Cal.3d at p. 908; see also *Wirta* v. *Alameda-Contra Costa Transit Dist.* (1967) 68 Cal.2d 51, 54-55, 59 [64 Cal.Rptr. 430, 434 P.2d 982], and cf. *Lehman* v. *City of Shaker Heights* (1974) 418 U.S. 298, 302-303 [41 L.Ed.2d 770, 776-777, 94 S.Ct. 2714].) However, because California courts take an independent and broader view of an individual's rights to free expression, under the California Constitution, does not mean that federal principles are irrelevant. Federal law can provide guidance, even though it is not controlling in this area. California principles will prevail, though, as long as federal rights are protected. (*Robins* v. *Pruneyard Shopping Center, supra,* 23 Cal.3d at pp. 907-910, rehg. den. (May 23, 1979), affd. (1980) 447 U.S. at p. 81 [64 L.Ed.2d at p. 751]; *People* v. *Chavez, supra,* 26 Cal.3d at pp. 351-352; *U.C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory, supra,* 154 Cal.App.3d at p. 1163; see also Cal. Const., art. I, § 24.)

### Discussion of Santa Paula Ordinance

 The Santa Paula ordinance impermissibly prohibits certain non-commercial signs, which announce or pertain to "specific events," while permitting a plethora of commercial signs. (*Metromedia Inc.* v. *San Diego, supra,* 453 U.S. 490, 514-515, 519 [69 L.Ed.2d 800, 819, 822].) As explained, *infra,* the purported governmental interests in aesthetics and traffic safety, "at times," are insufficient rationales to justify the selective ban which occurs under the terms of this ordinance. Also, by permitting the display of certain noncommercial signs while prohibiting others, the City has "opened the forum" and cannot rely on such justifications as aesthetics and traffic safety to restrict vital noncommercial speech. (*Id.,* at pp. 513-514 [69 L.Ed.2d at pp. 818-819]; *Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77, at pp. 82-83, 88-89 [112 Cal.Rptr. 777, 520 P.2d 1]; *Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d 51, 54-55 [64 Cal.Rptr. 430, 434 P.2d 982]; *Matthews* v. *Town of Needham* (1st Cir. 1985) 764 F.2d 58, 60-61; *Southern N. J. Newspapers* v. *State of N. J., etc.* (D.N.J. 1982) 542 F.Supp. 173, 187.) Furthermore, the City's ordinance attempts to restrict noncommercial messages, not only on public property, but on one's own private property. The greater interest which one has in controlling one's own property precludes the provision barring signs on vehicles. (*Matthews* v. *Town of Needham, supra,* 764 F.2d 58, 61.)

Another constitutional defect in this ordinance is that no prior notice of violation is required before confiscation transpires. Lack of prior notice is a violation of due process. (*Baldwin* v. *Redwood City* (9th Cir. 1976) 540 F.2d 1360, 1373-1374.)

Lastly, the ordinance unconstitutionally allows the government unfettered discretion in determining what messages will be tolerated in Santa Paula under a permit system. This standardless permit system is a prior restraint which restricts the right to the free exercise of speech. (*Dulaney* v. *Municipal Court, supra,* 11 Cal.3d at p. 84; *City of Indio* v. *Arroyo* (1983) 143 Cal.App.3d 151, 159-160 [191 Cal.Rptr. 565].)

In its ordinance, the City expressly states that the streets are not a traditional public forum. (See appen. A, § 12.04.170(a)(2) of the ordinance.) This is inaccurate. As the United States Supreme Court, in *Hague* v. *C.I.O.* (1939) 307 U.S. 496, 515 [83 L.Ed. 1423, 1436, 59 S.Ct. 954], so eloquently stated: "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the priv-

ileges, immunities, rights, and liberties of citizens. . . .'' This is a well-established principle in constitutional law. (*United States* v. *Grace* (1983) 461 U.S. 171, 177 [75 L.Ed.2d 736, 743, 103 S.Ct. 1702], citing cases; *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 299-302 [138 Cal.Rptr. 53, 562 P.2d 1302].)

The rule prohibiting the regulation or restriction of First Amendment activities in traditional public forums is not absolute. (*Hague* v. *C.I.O.*, *supra*, 307 U.S. 496, 515 [83 L.Ed. 1423, 1436].) Nonetheless, ''. . . the government's ability to permissibly restrict expressive conduct is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions 'are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication.' [Citations.]'' (*United States* v. *Grace, supra*, 461 U.S. at p. 177 [75 L.Ed.2d at pp. 743-744].)

Where, as here, there are additional restrictions, such as the prohibition on temporary signs, they are upheld only if narrowly drawn to accomplish a compelling governmental interest. (*Id.*, at p. 177.) Ordinances like the one at hand must survive exacting scrutiny. (*City of Indio* v. *Arroyo, supra*, 143 Cal.App.3d at p. 157.) Santa Paula's ordinance does not withstand such scrutiny.

The City relies on *City Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789 [80 L.Ed.2d 772, 104 S.Ct. 2118] in support of the constitutionality of the ordinance. Such reliance is misplaced. The ordinance in this case is significantly different from the one in *Vincent*. The *Vincent* ordinance purported to ban all handbills and signs on public property. (*Id.*, at p. 791 [80 L.Ed.2d at p. 778].) The Santa Paula ordinance allows signs ''designed'' or ''intended'' to be permanent, as well as signs which do not announce or advertise a specific event or pertain to a particular event or occurrence. (See appen. A, § 12.04.170(b).) Under the Santa Paula ordinance, one could legally affix a commercial sign to a pole within the public right of way which merely describes a product, but be criminally prosecuted for affixing a similar sign with a message about the creation of the Bill of Rights. This ordinance permits some noncommercial messages, not pertaining to specific events, while banning others. At the same time it allows many commercial messages.

Unlike *Vincent* the Santa Paula ordinance prohibits signs not only on public property, but also on property which is often privately held. Under the Santa Paula ordinance, one may not place signs on vehicles, nor may one place signs in areas near street corners. (See *Matthews* v. *Town of Needham, supra*, 764 F.2d at p. 61.) It does not appear that the City of

Santa Paula is genuinely concerned either with the place or the manner of speech. It prohibits signs on private property as well as the public right of way. And, it does not prohibit all signs in these places, just temporary ones announcing specific events such as elections. Nor has it demonstrated that the placement of such signs in these places produces the deleterious effects upon the City suggested in its ordinance. ■ To sustain such an ordinance the City must establish a need to regulate the content of the communication. (*Linmark Associates, Inc.* v. *Willingboro* (1977) 431 U.S. 85, 93-94 [52 L.Ed.2d 155, 162-163, 97 S.Ct. 1614].) It has not done so here. The City cannot constitutionally pick and choose the permissible subjects "appropriate" for public debate. (*Metromedia, Inc.* v. *San Diego, supra,* 453 U.S. 490, 513-516 [69 L.Ed.2d 800, 818-820].)

Moreover, when a city allows some noncommercial messages to be displayed in a street, under express provisions of an ordinance (*ante,* at p. 1125) or under a permit system, it has "opened the forum" for the expression of ideas. This may completely undercut any purported interests in aesthetics and safety. (*Metromedia Inc.* v. *San Diego, supra,* 453 U.S. 490, 513 [69 L.Ed.2d 800, 818]; see also *Dulaney* v. *Municipal Court, supra,* 11 Cal.3d at pp. 82-83, 88-89; *People* v. *Katz* (1977) 70 Cal.App.3d Supp. 1, 7 [138 Cal.Rptr. 868].) ■ In this case, not only does the ordinance allow the display of only certain types of noncommercial messages, it also provides a government official unfettered discretion to determine what "banners" may be displayed in the city under a permit system. (See appen. A at § 12.04.170(d)(2).)

The City is obviously willing to tolerate some detraction from the interests in aesthetics and safety it purports to support. Under these circumstances, it appears speculative that these interests are sufficiently infringed upon to justify restrictions on the freedom of ideological expression inherent in this ordinance. (*Southern N. J. Newspapers* v. *State of N. J., etc., supra,* 542 F.Supp. 173, 187.) ■ Using the concept of "aesthetics" is not a talismanic means of legitimizing a ban on some temporary signs. This is especially true where fully protected First Amendment interests are concerned. It is not self-evident that a partial ban on temporary signs has such a positive impact on aesthetics to warrant the restriction on the right of free expression of ideas. (*Id.,* at pp. 185-186; *Baldwin* v. *Redwood City, supra,* 540 F.2d at p. 1370.)

■ Furthermore, the City is imprecise in defining the relationship between the banning of certain noncommercial signs and the impairment of traffic safety. The City merely proclaims, at the beginning of its ordinance, "[a]t times, temporary signs pose traffic safety hazards due to sight line impairment and visual distraction." (See appen. A, § 12.04.170(a)(1).)

■ But, since the City permits certain types of noncommercial messages while banning others, it cannot justify the prohibition without a strong showing of harm to the purported interests. (*City of Indio* v. *Arroyo, supra,* 143 Cal.App.3d at pp. 158-159; *Baldwin* v. *Redwood City, supra,* 540 F.2d 1360, 1370; *Southern N. J. Newspapers* v. *State of N. J., etc., supra,* 542 F.Supp. 173, 185-186.) It has not accomplished this.

■ There is no showing of any need to stifle the right to free expression of noncommercial ideas. It must be remembered that in this country, and particularly in this state, the streets are presumed to be an appropriate, traditional public forum for the exchange of ideas. (*Hague* v. *C.I.O., supra,* 307 U.S. 496, 515-516 [83 L.Ed. 1423, 1436-1437]; *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d at pp. 299-302.)

The City argues, however, that even if the streets are traditional public forums, it may restrict the use of temporary signs since adequate alternative forums exist in which petitioner, and the public, may display their messages. This argument is not persuasive.

■ The First Amendment right to the display of political posters, and the like, is substantial. (*Baldwin* v. *Redwood City, supra,* 540 F.2d at p. 1368.) Where severe restrictions on the type of messages which may be displayed by temporary signs in traditional public forums exist, it may be irrelevant that alternative forums are "available." (*Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d at pp. 58-59.) Indeed, ". . . it is settled law that within the context of the traditional public forum, abridgement of the freedom of expression may not be conditioned upon the existence of alternative channels of communication. [Citations.]" (*Sussli* v. *City of San Mateo* (1981) 120 Cal.App.3d 1, 8 [173 Cal.Rptr. 781].) Furthermore, "'. . . [a]bsent the presence of some conflicting interest that could be protected in no other way, petitioners have the right to choose their own forum.' [Citation.]" (*Id.,* at pp. 8-9.)

■ Even if this court were to accept the statement that alternative forums are available to petitioner and the public, serious questions would arise as to the adequacy of those alternatives. Various means of expression are not fungible. For example, temporary political posters, regarding an upcoming election, have unique advantages over other means of communication. (*Baldwin* v. *Redwood City, supra,* 540 F.2d at p. 1368.) They are far less costly than radio or television campaigns. They may be localized to a degree that radio and newspaper advertising may not. (*Ibid.*) Even custom bumper stickers, which are allowed under this ordinance, may be prohibitively expensive, hard to obtain and difficult to remove. As a practical matter, alternative means, even if they were appropriate substitutes under

1128

this ordinance, are far from satisfactory. (*Linmark Associates, Inc.* v. *Willingboro, supra,* 431 U.S. 85, 93 [52 L.Ed.2d 155, 162].)

Santa Paula's ordinance not only unconstitutionally allows "permanent" signs while restricting certain "temporary" ones, but also impermissibly provides the director of public works unfettered discretion, through a prior permit system, in determining what "noncommercial," "nonpolitical" banners may be displayed in the City. (See appen. A, § 12.04.170(d)(2).)

■ In opening the forum to those "community" messages the director sees fit, the ordinance acts as an invalid prior restraint on the expression of protected First Amendment rights. (*Dulaney* v. *Municipal Court, supra,* 11 Cal.3d 77, 82-83, 88-89; *Baldwin* v. *Redwood City, supra,* 540 F.2d 1360, 1371.) Here, petitioner has properly asserted the public's rights to free expression of ideas, since it is apparent on the face of the ordinance that citizens run an unacceptable risk of suppression of their ideas. (*City Council* v. *Taxpayers for Vincent, supra,* 466 U.S. 789, at pp. 796-797 [80 L.Ed.2d 772, at pp. 781-782], see esp. p. 798, fn. 15 [80 L.Ed.2d at p. 784], citing *Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 612 [37 L.Ed.2d 830, 839, 93 S.Ct. 2908].)

Under this ordinance, citizens must concern themselves with whether the unfettered discretion of a single governmental official will be used to stifle the content and method of First Amendment expression, based upon the vagaries of whether the official believes a banner is intended to be temporary or permanent, or whether the message displayed regards a "nonpolitical," "community" event. The ordinance presents no definite, objective standards for making these determinations. As such, it is an unconstitutional prior restraint, violating the free exercise of First Amendment rights. (*Dulaney* v. *Municipal Court, supra,* 11 Cal.3d at pp. 84, 86; *Baldwin* v. *Redwood City, supra,* 540 F.2d at p. 1371; *Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d at pp. 54-55; *City of Indio* v. *Arroyo, supra,* 143 Cal.App.3d at pp. 158-160; see also *N.A.A.C.P. Western Region* v. *City of Richmond* (9th Cir. 1984) 743 F.2d 1346, 1354-1355.)

■ The ordinance provides for summary seizure of one's property without prior notice or hearing if, in the opinion of the City officials, the signs violate the ordinance. Summary seizure of signs, even for a few days, can deprive the sign's owner of an important First Amendment liberty interest, especially during election periods. (*Baldwin* v. *Redwood City, supra,* 540 F.2d at pp. 1373-1374.)

■ The due process clauses of both the state and federal Constitutions require some form of notice, and perhaps a hearing, before one is deprived

of his property, unless an imminent danger to persons or property exists. (*Id.*, at p. 1374; *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d at pp. 307-308.) ▪ The Santa Paula ordinance is constitutionally deficient on its face in that it fails to require even an attempt to notify sign owners of an imminent taking of their property. (*Baldwin* v. *Redwood City, supra,* 540 F.2d at p. 1374.)

## Conclusion

Let a peremptory writ of mandate issue directing the court below to enjoin the enforcement of this ordinance.

Stone, P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied June 9, 1986.

**1130**

APPENDIX A

*Posted up at City Hall
11-26-85 7 am*

ORDINANCE NO. __845__

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF
SANTA PAULA ADDING SECTION 12.04.170 TO CHAPTER 12.04
OF THE SANTA PAULA MUNICIPAL CODE, DEALING WITH TEMPORARY SIGNS

The City Council of the City of Santa Paula does ordain as follows:

SECTION 1:

Section 12.04.170 is hereby added to the Santa Paula Municipal Code to read as follows:

SECTION 12.04.170. TEMPORARY SIGNS.

(a) Legislative Findings. The City Council finds as follows:

(1) Aside from this chapter, temporary signs as defined in this section are not regulated by this Code, and are therefore not subject to design review or approval as to their size, shape, color, design or placement. The lack of regulation of temporary signs has in the past led to visual clutter within the community and aesthetic blight. At times, temporary signs pose traffic safety hazards due to sight line impairment and visual distraction.

(2) Property and facilities located within the public right-of-way, such as utility poles, benches, hydrants, bridges, sidewalks, parkways, streets and similar structures are not by tradition or designation a forum for communication by the general public, and the Council wishes to preserve these structures for their intended purposes, which is the safe, efficient and pleasant movement of vehicular and pedestrian traffic and operation of utility systems.

(3) The regulations and prohibitions specified in this section are necessary to preserve items located within the public right-of-way for their intended purposes, and to prevent the visual clutter, blight, and traffic safety hazards caused by temporary signs therein.

(b) "Temporary sign" means any sign, handbill, or poster which is placed to advertise or announce a specific event, or which pertains to a particular event or occurrence, or which is not designed or intended to be placed permanently. Examples of temporary signs include, but are not limited to, signs, handbills,

EXHIBIT A

signs, boards, or posters relating to garage sales, political candidates, issues, or ballot measures, concerts, "swap meets" and the like.

(c) <u>Posting Prohibited.</u> No person shall paint, mark, or write on, or post or otherwise affix, or erect, construct, maintain, paste, nail, tack or otherwise fasten or affix, any temporary sign on any sidewalk, parkway, crosswalk, curb, street lamp post, pole, bench, hydrant, tree, shrub, bridge, electric light or power or telephone wire pole, or wire appurtenance thereof, or upon any street sign or traffic sign, or upon any vehicle or other object located within the public right-of-way which is not maintained for the purpose of communications by temporary signs by the general public.

(d) <u>Exceptions.</u> This section shall not: (1) prevent a public officer or employee from posting notices as required by law, such as notices of street abandonment or notices of proposed assessment district proceedings, as required by the Streets & Highways Code, or other statutory authority; (2) prevent the Director of Public Works from issuing an Encroachment Permit for the erection of banners pertaining to noncommercial and nonpolitical community event, such as parades, fairs, and community celebrations; (3) pertain to structures located within the right-of-way which by tradition or designation are used for the purpose of communication by the general public. Such structures shall include kiosks, bulletin boards, benches upon which advertisement is authorized, newspaper racks, and billboards as authorized by this Code; (4) bumper stickers affixed to automobile bumpers; and (5) other temporary signs otherwise permitted by this Code.

(e) <u>Sight Distance.</u> No temporary sign erected on private property shall be erected or placed at the intersection of any street or within the segment created by drawing an imaginary line between points thirty feet (30') back from where the curb lines of the intersection quadrant intersect.

(f) <u>Removal.</u> Temporary signs not prohibited by this section shall be removed within fourteen (14) calendar days after the event to which they relate occurs.

(1) Any temporary sign posted or otherwise affixed in violation of this section may be removed by any person authorized by Chapter 1.12 of this Code. Signs removed by City employees shall be taken to City Hall. The employee removing the sign shall immediately attempt to notify the owner of the sign, if such can be ascertained. In cases where a sign contains the name of a printing firm or political candidate, the Department shall also immediately attempt to notify such firm or candidate of the fact of removal, the location of the sign, and the procedure for retrieving the sign.

**EXHIBIT A**

**1132**

(g) Removal of Signs. Any person desiring to retrieve a sign removed by the City may do so upon application to the City and proof of identity and ownership. If a person wishes to contest the fact that a sign was placed in violation of this section, he or she shall have the right to an administrative hearing before the Director of Public Works. If the Director finds that the sign was lawfully posted, he shall return the sign immediately.

(h) Destruction of Signs. Any temporary sign removed by the City may be considered abandoned if it is not retrieved within fifteen (15) calendar days after the date of such removal, and may be disposed of by the City without liability therefor to any person.

(i) Citation. After one (1) violation of this section within one (1) year, a citation may be issued.

(j) Violation - Penalty. The violation of this section and the penalty therefor shall be as provided in Section 17.84.040 of this Code.

AYES: Councilmembers Melton, Maland, Escoto, Barringer & Mayor Urias

NOES: None

ABSENT: None

MAYOR OF THE CITY OF SANTA PAULA

ATTEST:

CITY CLERK OF THE CITY OF SANTA PAULA

.9115

**EXHIBIT A**

TATE OF CALIFORNIA)
OUNTY OF VENTURA )S
ITY OF SANTA PAULA)

I, STACEY B. MacDONALD, City Clerk of the City of Santa
'aula, do hereby certify that the above and foregoing Ordinance
ias duly passed and adopted by the Council of said City at a
·egular meeting thereof held on the ___4th___ day of __November__ ,
.985, by the following vote, to wit:

,YES: Councilmembers Helton, Maland, Escoto, Barringer & Mayor Urias

IOES: None

ABSENT: None

IN WITNESS WHEREOF, I have hereunto set my hand and af-
fixed the official seal of the City this __6th__ , day of __November__ ,
1985.

 STACEY B. MacDONALD
 Clerk, City of Santa Paula

# EXHIBIT A