TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 90-938 |
| of | : | |
| | : | AUGUST 6, 1991 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DaVIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE BILL LEONARD, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

May a mobilehome park owner, by means of rental agreement, rule, or regulation, prohibit the display by tenants of political signs in the windows of mobilehomes?

CONCLUSION

A mobilehome park owner may not, by means of rental agreement, rule, or regulation, prohibit the display by tenants of political signs in the windows of mobilehomes.

ANALYSIS

Beginning in the late 1960's, the Legislature undertook significant statutory regulation of both mobilehomes and mobilehome parks, addressing a number of concerns that arose out of the unique features of the mobilehome park environment. (*Schmidt v. Superior Court* (1989) 48 Cal.3d 370, 377.) These provisions were reorganized in 1978 as the Mobilehome Residency Law, commencing with section 798 of the Civil Code.[1] (*Id.* at pp. 377-378; 73 Ops.Cal.Atty.Gen. 431, 432 (1990).) While protecting specified rights of the park residents, the Legislature made it clear that the park owner retained the right to require the residents to adhere to the terms of rental agreements (§ 798.75) and comply with the park's rules and regulations (§ 798.25).

The present inquiry is whether a mobilehome park owner may enforce a provision of a rental agreement or rule or regulation prohibiting the display by residents of political signs in the windows of the mobilehomes. We conclude that the owner may not.

_____

[1]All section references are to the Civil Code unless otherwise specified.

The ultimate enforcement mechanism for the violation of any term of the rental agreement or of any existing rule or regulation would consist of the termination of the tenancy in the manner prescribed under the Mobilehome Residency Law (§§ 798.55-798.61) followed by an unlawful detainer proceeding (Code Civ. Proc., § 1161 et seq.).

In this regard, section 798.55 states:

"(a) The Legislature finds and declares that, because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobilehomes, and the cost of landscaping or lot preparation, it is necessary that the owners of mobilehomes occupied within mobilehome parks be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter.

"(b) The management shall not terminate or refuse to renew a tenancy, *except for a reason specified in this article . . . .*" (Emphasis added.)

Section 798.56 provides the specified reasons for terminating the leases of park residents. It states in part:

"A tenancy shall be terminated by the management *only for one or more of the following reasons:*

"(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Conduct by the homeowner or resident, upon the park premises, which constitutes a substantial annoyance to other homeowners or residents.

"(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Failure of the homeowner or resident to comply with a *reasonable* rule or regulation of the park which is a part of the rental agreement or any amendment thereto. . . ." (Emphases added.)

Section 798.56 prescribes the exclusive grounds for termination of a mobile home tenancy. Only subdivisions (b) and (d) arguably pertain to the circumstances presented for consideration. As for subdivision (b), we have not been apprised of any factual predicate or reasoned hypothesis suggesting that the display of a political sign in the window of a mobilehome would constitute "conduct by the homeowner or resident, upon the park premises, which constitutes a substantial annoyance to other homeowners or residents." Consequently, we are left with a single issue arising from subdivision (d), specifically, whether the proposed rule prohibiting the display of political signs would constitute a *reasonable* rule or regulation of the park.

The use by the Legislature of the term "reasonable" was neither incidental nor inadvertent. It is a cardinal rule of statutory construction that every word, phrase, and provision is intended to have meaning and to perform a useful function. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159; 72 Ops.Cal.Atty.Gen. 86, 88 (1989).) The inquiry is thus reduced: is the prohibition against the display of *any* "political" sign *in* the window (i.e, within the mobilehome owner's own residential space) reasonable?

We first note that the restriction would apply universally, and not against only a certain class of tenants or only as to particular political theories, preferences, or points of view.

Hence, we do not have the element of discrimination as was present in the case of *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816, 840-844. Nor would the restriction draw any distinction as between signs which might be deemed socially appropriate and aesthetic and those which might be viewed as indecent, obscene, or profane. The sole disqualifier is that the sign be interpreted or construed as some type of political expression.

It is not, of course, at all clear as to what might be considered political expression. The term "political" was discussed in *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484-485, as follows:

> "The Merriam Webster Dictionary, second edition, defines `political' as `Of or pertaining to the exercise of the rights and privileges or the influence by which the individuals of a state seek to determine or control its public policy; having to do with the organization or action of individuals, parties, or interests that seek to control the appointment or action of those who manage the affairs of state.' The same authority defines `politics' as `The science and art of government; the science dealing with the organization, regulation, and administration of a state, in both its internal and external affairs; political science. . . . The theory or practice of managing or directing the affairs of public policy or of political parties; hence, political affairs, principles, convictions, opinions, sympathies, or the like. . . .'"

In *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 487, the court quoted from *Mallard v. Boring* (1960) 182 Cal.App.2d 390, 395, as follows: "The term `political activity' connotes the espousal of a candidate *or a cause,* and some degree of action to promote the acceptance thereof by other persons." If the term "political" connotes the espousal of a cause, then it would presumably include expressions relating to environmental concerns (e.g., "save the whales"), civil rights issues (e.g., "we shall overcome"), military policy (e.g., "we support our troops"), patriotism (e.g., display of the flag), and support or disapproval of any legislative action or proposed action, or of any initiative or referendum. In short, we view the prohibition as vague, indefinite, and overbroad in scope.

In addition, the prohibition applies exclusively to *political* expression. The syllogistic justification is untenable: *all* political speech is controversial and undesirable, and *all* *non*-political speech is neither controversial nor undesirable. Hence, the prohibition is, in our view, intrinsically unreasonable.

The prohibition is also extrinsically unreasonable. Specifically, it is in direct conflict with public policy.[2] The California Constitution, article I, section 2, subdivision (a) provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

---

[2]The exercise of broad private powers which interfere with public policy may be prohibited. (*Schweiger v. Superior Court* (1970) 3 Cal.3d 507, 515.) Accordingly, one may not exercise normally unrestricted power which contravenes public policy. (*S. P. Growers Assn. v. Rodriguez* (1976) 17 Cal.3d 719, 728; see *Barela v. Superior Court* (1981) 30 Cal.3d 244, 250; *Vargas v. Municipal Court* (1978) 22 Cal.3d 902, 913-914.)

Public policy may be expressed in statutes or caselaw (*Dabbs v. Cardiopulmonary Management Services* (1987) 188 Cal.App.3d 1437, 1441-1442) and similarly embraces constitutional precepts (*James v. Marinship Corp.* (1944) 25 Cal.2d 721, 739; *Abstract Investment Co. v. Hutchinson* (1962) 204 Cal.App.2d 242, 248).

Freedom of expression is also protected by the First Amendment of the United States Constitution, as made applicable to the states by the Fourteenth Amendment. (*Stanley v. Georgia* (1969) 394 U.S. 557, 559.)

Expression on political issues has always rested on the highest rung of the hierarchy of First Amendment values. (*NAACP v. Claiborne Hardware Co.* (1982) 458 U.S. 886, 913; *Buckley v. Valeo* (1976) 424 U.S. 1, 14.) Indeed, the constitutional guarantee has its fullest and most urgent application precisely in the arena of political discourse. (*Baldwin v. Redwood City* (9th Cir. 1976) 540 F.2d 1360, 1366.) Thus, the right to display political signs and posters is substantial. (*Id.* at p. 1368; *Gonzales v. Superior Court* (1986) 180 Cal.App.3d 1116, 1127.) Further, any such restriction made applicable within the confines of one's own property would invite an even greater scrutiny. (*Spence v. Washington* (1974) 418 U.S. 405, 411; *Matthews v. Town of Needham* (1st Cir. 1985) 764 F.2d 58, 60-61; *Gonzales* v. *Superior Court, supra*, 180 Cal.App.3d at 1124.)

In addition to the constitutional dimension, the statutes of this state clearly reflect a strong public policy in favor of political expression. The Mobilehome Residency Law itself so provides. Section 798.50 states:

"It is the intent of the Legislature in enacting this article to ensure that homeowners and residents of mobilehome parks have the right to peacefully assemble and *freely communicate with one another and with others* with respect to mobilehome living or for social or educational purposes." (Emphasis added.)

Section 798.51 states:

"No provision contained in any mobilehome park rental agreement, rule, or regulation shall deny or prohibit the right of any homeowner or resident in the park to do any of the following:

"(a) Peacefully assemble or meet in the park, at reasonable hours and in a reasonable manner, for any lawful purpose. Meetings may be held in the park community or recreation hall or clubhouse when the facility is not otherwise in use, and, with the consent of the homeowner, in any mobilehome within the park.

"(b) Invite public officials, candidates for public office, or representatives of mobilehome owner organizations to meet with homeowners and residents and speak upon matters of public interest, in accordance with Section 798.50.

"(c) *Canvass and petition homeowners and residents for noncommercial purposes relating to mobilehome living, election to public office, or the initiative, referendum, or recall processes, at reasonable hours and in a reasonable manner, including the distribution or circulation of information."* (Emphasis added.)

The foregoing statutes clearly evince the legislative concern with the right of mobilehome residents to engage in social and political communication, not only in writing or within a residence, but through direct dialogue with public officials and candidates for public office upon the common areas of the park or within a mobilehome. Given the strength of the social policy in favor of such communication, it is not plausible to attach any negative significance to the absence of specific reference to political signs or posters. (Cf., 70 Ops.Cal.Atty.Gen. 75, 80 (1987).) On the contrary, it is unreasonable to assume that restrictions upon speech which are not permitted outside the residence would be condoned within the more traditionally protected space.

The owners of mobilehome parks have elected to engage in an enterprise which, as indicated at the outset, is heavily regulated by the state through the exercise of its police power. The Legislature has expressly circumscribed the landlord's right to control the common areas of the park to the exclusion of its tenants' First Amendment rights. Whether the statute covers the precise means of speech under consideration is immaterial. The significance of the legislation for purposes of this analysis is that it expresses a clear state policy that the fundamental rights of tenants, whether derived from the statute or from the organic law of this state, shall not be curtailed solely because the property where they live and communicate, both with one another and with society at large, is privately owned.

The proposed rule in question, therefore, would contravene the public policy of this state and of the United States, not only because it restrains political speech within the confines of one's own residential space, but also because it discriminates among messages on the basis of content (i.e., *political* speech) and thereby constitutes an invidious and prior restraint upon the expression of such ideas. (Cf., *Gonzales v. Superior Court, supra,* 180 Cal.App.3d at 1128.) It would not be a "reasonable" rule for purposes of section 798.56, subdivision (d), and thus could not be the basis for terminating the lease of a mobilehome owner.

It is concluded that a mobilehome park owner may not, by means of rental agreement, rule, or regulation, prohibit the display by tenants of political signs in the windows of mobilehomes.

\* \* \* \* \*