MARDI GRAS OF SAN LUIS
OBISPO, Plaintiff,

v.

CITY OF SAN LUIS OBISPO,
Defendant.

No. CV 02–323 ABC (BQRX).

United States District Court,
C.D. California.

Feb. 11, 2002.

Mark Rosenbaum, Esq., ACLU Foundation of So. California, Los Angeles, CA, Carol Sobel, Esq., Yvonne Simon, Esq., Santa Monica, CA, for Plaintiff/Petitioner/Appellant.

Thomas Winfield, Esq., Brown Winfield & Canzoneri, Los Angeles, CA, for Defendant/Respondent/Appellee.

## ORDER RE: PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

COLLINS, District Judge.

Plaintiff's application for a preliminary injunction (the "Application") came on regularly for hearing before this Court on February 5, 2002. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Plaintiff's application is GRANTED.

### I. Background

Mardi Gras of San Luis Obispo ("MGSLO") claims that since 1978, it has

1. Defendant agrees that it has granted a permit for the Mardi Gras celebration for the past 28 years; however, it disputes that the application was actually granted to MGSLO. MGSLO claims that prior to January 2000, MGSLO was known as Mystic Krewe and had submitted permits for a special event to the city, which were routinely granted. *See* Anderson Decl. ¶ 3.

2. The SLOMC § 5.76 provisions most relevant to the instant constitutional analysis include:
5.76.030: Permit Required.
...no person shall conduct or cause to be conducted, participate or engage in, hold, manage, employ, permit or allow another to conduct a parade or local special event, in, on or upon any city street, sidewalk, alley, park, way, public place or public property which is owned or controlled by the city without first having obtained a written permit from the city administrative officer pursuant to this chapter.
5.76.040: Permit.
A. The application for a permit under this chapter to conduct or engage in any parade or local special event, which involves the use of streets, alleys, sidewalks, parks, ways or other public property owned or controlled by the city shall be filed with the city administrative officer. The person receiving such filing shall, within ten days, determine whether such proffered filing is appropriate under this chapter and contains all necessary information and other materials and shall thereupon inform the applicant that (1) the application is or is not appropriate under Section 5.76.070;

sponsored a parade in the City of San Luis Obispo (the "City") to celebrate "Fat Tuesday," a religious holiday marking the beginning of Lent.[1] MGSLO claims that the parade, which is substantially similar from year to year, is held over a one mile span of Marsh Street in the center of the City and generally lasts for one to two hours. *See* Declaration of Connie Anderson ("Anderson Decl.") at ¶ 2.

The license and permit requirements and regulations concerning parades and special events in the City of San Luis Obispo are codified in the San Luis Obispo Municipal Code ("SLOMC") Chapter 5.76 *et seq.*[2]

(2) is or is not complete, and (3) is or is not accepted for filing and processing. **Such applications shall be filed at least sixty days prior to the date the permit is to become effective.** (emphasis added)
**B. An application for a parade or local special event by a person enjoying First Amendment protection under the United States Constitution shall be filed as follows:** (emphasis added)

| Permitted Activity Involves use of: | Must be filed by the following number of days prior to the activity: |
|---|---|
| 1. Streets, highways... | 5 |
| 2. Sidewalks | 3 |
| 3. Parks | 3 |
| 4. Other | 3 |

**C. A claim for alternative treatment as a group enjoying First Amendment protection shall be filed with the permit application. The city administrative officer may require such proof and documentation as he/she may deem reasonably necessary to verify the constitutionally protected status of the parade or event and the applicability of the alternative treatment in subsection A of this section.** (emphasis added)
D. Each application shall be accompanied by a nonrefundable permit application fee in an amount established from time to time by resolution of the city council. The city administrative officer shall have the authority, if good cause is shown and the nature of the application reasonably and feasibly lends itself to expedited processing, to consider, grant or deny any application for a permit

On November 6, 2001, the City Council adopted Resolution No. 9251 (2001 Series) (the "Resolution") which, among other things, eliminated a cap of $10,000 on

which is filed later than the time prescribed in this section.

G. The city administrative officer shall issue a permit under this chapter if it is determined that the following criteria have been met:

1. The proposed use of the property is not governed by or subject to any other permit procedures provide elsewhere in this code...

2. The preparation for the conduct of the proposed use...will not unreasonably or unfeasibly burden city resources necessary to avoid the undue impeding, obstructing, impairing or interfering with the public's use of the street or other public property; and

3. The preparation for or other conduct of the proposed event...will not unduly impede, obstruct or interfere with the operation of emergency vehicles or equipment in or through the particular permit area, or adversely affect the city's ability to perform municipal functions or furnish city services in the vicinity of the permit area; and

4. The proposed use...does not present a substantial or unwarranted safety or traffic hazard; and

5. The proposed use...will not have a significant adverse environmental impact...

5.76.050: Permit application—Fee.

A. ...the permit application fees, daily fees and other additional fees for the use of city streets...pursuant to this chapter shall be established by the city council by resolution.

5.76.090: Insurance.

A. Each permit shall expressly provide that the permitee agrees to defend, protect, indemnify and hold the city, its officers, employees and agents free and harmless from and against any and all claims, damages, expenses, loss of liability of any kind or nature whatsoever arising out of, or resulting from, the alleged acts or omissions of permitees, its officers, agents or employees in connection with the permitted event or activity; and the permit shall expressly provide that the permitee shall, at permitee's own cost, risk, and expense, defend any and all claims or legal actions that may be commenced or filed against the city, its officers, agents, or employees, and that permittee shall pay any settlement entered into and shall satisfy any judgment that may be rendered against the city, its officers, agents or employees as a result of the alleged acts or omissions of permittee or permitee's officer's, agents or employees in connection with the uses, events or activities under the permit.

B. The city shall procure and maintain in full force and effect during the term of the permit a policy of insurance covering general liability, and property damage in an amount to be determined by the risk manager, which policy includes the city, its boards, officers, agents and employees as named insured or additional named insureds, and proof of insurance shall be submitted to the city at least ten days prior to the event.

C. **Nothing in this section shall be construed to apply to parades or local special events permitted under this chapter which enjoy First Amendment protection under the United States Constitution** except that such parades or local special events shall be required to either (1) agree to indemnify, protect, defend and hold harmless the city, its officers and employees, all participants in and all observers of the permitted parade, event or activity against all claims, damages, expenses, loss or liability of any kind...arising out of, or resulting from, the alleged acts or omissions of permitee, its officers, agents or employees in connection with the permitted parade, event or activity; or (2) agree to redesign or reschedule the permitted event to respond to specific risks, hazards and dangers to the public health and safety identified by the city administrative officer as being reasonably foreseeable consequences of the permitted parade or event; or (3) provide insurance coverage as required by this section. (emphasis added)

D. **A claim for alternative treatment under subsection C of this section shall be filed with the permit application, and an agreement or proof of insurance, as applicable, shall be filed prior to permit issuance. The city administrative officer may require such proof and documentation as he/she may deem reasonably necessary to verify the constitutionally protected status** of the parade or event and the applicability of subsection C of this section. (emphasis added)

5.76.100: Departmental Service Charge.

1. ...a permitee shall pay the city for departmental services charges incurred in connection with or due to the permitee's activities under the permit. Additionally, if city property is destroyed or damaged by reason of permitee's use, event or activity, the permitee shall reimburse the city for the actual replacement or repair cost of the destroyed or damaged property.

B. The amount and method of assessing and collecting fees and charges shall be set by city council resolution.

sponsor-paid costs for non-commercial events above a $1,000 deductible. The Resolution further provided that permitees for noncommercial activities must pay for "Sponsor Paid Costs," [3] including City police and any outside law enforcement agencies with whom the city contracts for services. The Resolution does not provide standards to determine how these costs are assessed and what factors are to be used to determine how many law enforcement officers and/or other city staff are to be assigned to an event. *See* Application, Exh. 2.

On May 25, 2001, MGSLO met with City administrators to discuss the Mardi Gras parade planned for 2002. MGSLO asserts that it was informed by the City officials that a permit would not be approved for 2002. *See* Application at 5. On June 7, 2001, a City administrator sent a letter to MGSLO discussing the City's concerns with the parade and the application that might be submitted by MGSLO. *See* Opposition ("Opp'n."), Exh. 1. The City's concerns included the fact that during the last several years, "the crowds drawn to the Mardi Gras parade have grown increasingly large and more difficult to control." *See* Declaration of Kenneth Hampian ("Hampian Decl.") ¶ 3. In addition, the City noted that the number of arrests made both during and immediately after the parade had increased. *Id.*

On January 11, 2002, Plaintiff filed a complaint against Defendant seeking declaratory and injunctive relief for alleged violations of the First Amendment of the United States Constitution, 42 U.S.C. § 1983, and the California Constitution: Article I, Sections 2 and 3. Plaintiff also filed an application for a temporary restraining order ("TRO") and an order to show ("OSC") cause why a preliminary injunction should not issue. Plaintiff argued that Defendant should be enjoined from enforcing San Luis Obispo Municipal Code Chapter 5.76, *et seq.* On January 17, 2002, the Court granted the request for a TRO and set the application for a preliminary injunction on calendar.

On January 18, 2001, MGSLO submitted a special event permit application to the City to hold the "24th Annual Mardi Gras Parade" on February 9, 2002 in downtown San Luis Obispo. The application states that the event will last approximately twenty-five minutes. *See* Reply, Exh. 7. On January 24, 2002, the City approved the application and noted, among other things, that MGSLO must, by February 7, 2002, either provide the City with a Certificate of Insurance for the festival showing property damage and public liability in the amount of $2,000,000 and an Endorsement naming the City as an additional insured or provide an indemnity agreement.[4]

On January 25, 2002, Defendant filed its opposition to the application for a prelimi-

---

C. The city administrative officer shall determine the type of permitted parade, event or activity and calculate the applicable departmental services charges as set by council resolution. . . .

3. It is unclear from the Resolution whether the payment of "Sponsor Paid Costs" applies simply to noncommercial events or other types of events.

4. Plaintiff notes that although it has been granted a permit to conduct the Mardi Gras

festival, the instant action for a preliminary injunction is not moot. *See* Reply at 2. Plaintiff argues that the action is not moot because (1) the permit issued violated the TRO because it is conditioned on a demand for nearly $5,000 in costs and $2 million in liability insurance, (2) once the TRO expires, there will be no binding order restricting future application of the facially unconstitutional ordinance, and (3) the violation is capable of repetition. The Court agrees that the instant action for a preliminary injunction is not moot.

nary injunction and Plaintiff replied on January 30, 2002.

## II. Discussion

### A. Standing

As a threshold matter, the Court must examine whether Plaintiff has standing to raise its facial challenges. Article III standing contains three elements: (1) "an injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) likelihood that the injury will be " 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 563, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The first element of the standing inquiry—the injury in fact—is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent', not 'conjectural' or 'hypothetical.' " *Id.* at 560, 112 S.Ct. 2130 (citations omitted). A plaintiff must show that " 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.' " *4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1111–12 (9th Cir. 1999) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). "Thus, a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " *Id.* at 1112 (quoting *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (*"Munson"*)).

When a case concerns a challenge that a statute or ordinance is, on its face, unconstitutional, particularly in the First Amendment context, the type of facial challenge at issue affects the standing analysis. While the plaintiff must still demonstrate an injury in fact, plaintiff may assert not just his own constitutional rights, but also the constitutional rights of others. *Id.*

A statute may be facially unconstitutional if (1) " 'it is unconstitutional in every conceivable application' " or (2) " 'it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad.' " *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998) (quoting *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).[5] The first type of facial challenge involves a plaintiff who argues that the statute "could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity." *Id.* In such a case, courts apply the general rule that a plaintiff has standing only to vindicate his own constitutional rights, rights that have been, or are in imminent danger of, being invaded by the government's implementation or enforcement of that statute. *See id.; FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 220–21, 237, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("There can be little question that the motel owners have 'a live controversy against enforcement of [a] statute' " that regulates adult motels and other "sexually oriented businesses.").

However, an exception to the traditional standing rule applies in the First Amendment context when a plaintiff raises the second type of facial challenge. *Foti,* 146 F.3d at 635. In this type of challenge, "the plaintiff argues that the statute is

---

**5.** "A successful challenge to the facial constitutionality of a law invalidates the law itself." *Foti,* 146 F.3d at 635; *accord Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("A 'facial' challenge . . . means a claim that the law is 'invalid in toto'—and therefore incapable of any valid application.").

written so broadly that it may inhibit the constitutionally protected speech of third parties." *Id.; accord Munson,* 467 U.S. at 956–57, 104 S.Ct. 2839. In such a case, the general limitation on standing is relaxed because there exists "a danger of chilling free speech" in society as a whole. *See Munson,* 467 U.S. at 956–57, 104 S.Ct. 2839. Thus, so long as the plaintiff himself satisfies the injury in fact requirement, he has standing to argue that a law is facially overbroad as it relates to the expressive activities of others, whether or not he also challenges the law's overbreadth as it relates to his own expressive activities. *See id.* (a for-profit professional fund raiser who contracts with charitable organizations has standing to challenge a statute that prohibits charitable organizations from paying or agreeing to pay as expenses more than 25 percent of the amount raised in connection with any fundraising activity); *see also S.O.C., Inc. v. County of Clark,* 152 F.3d 1136, 1142–43 (9th Cir.), *amended on other grounds,* 160 F.3d 541 (9th Cir.1998) (plaintiff, whose First Amendment activities are directly impacted by the new ordinance, has standing to challenge the impact of the overbroad ordinance on behalf of itself and others not before the court). The "prior restraint" cases, in which one who is subject to the law alleges that a licensing statute vests unbridled discretion in the decision-maker over whether to permit or deny the expressive activity, fall into this category. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (discussing cases where a plaintiff has standing to bring facial overbreadth challenges, including prior restraint and unreasonable time, place and manner claims, "not because his own rights have been violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expres-

sion"); *see also Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license."); *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (same).

■ Here, Plaintiff has standing to challenge SLOMC § 5.76. First, Plaintiff has standing because it is a party that is subject to the requirements of Defendant's permit scheme. Moreover, Plaintiff has claimed that it has sustained a direct injury as the result of the challenged official conduct because the City has granted Plaintiff a permit which imposes a constitutionally objectionable financial burden. *See* Reply at 2; *Convoy,* 183 F.3d at 1111–12. Plaintiff also has standing to challenge the ordinance because of the ordinance's potential to chill the protected expression of others not presently before the Court. As stated above, a plaintiff has standing to challenge a statute that it claims is written so broadly that it may inhibit the constitutionally protected speech of third parties. *See Foti,* 146 F.3d at 635; *accord Clark v. City of Lakewood,* 259 F.3d 996, 1010 (9th Cir.2001) ("When there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from

constitutionally protected speech or expression."). Plaintiff claims that here too, "there is a serious prospect that those subject to this law will engage in self-censorship and avoid participating in protected activity . . ." *See* Application at 8; *Clark v. City of Lakewood,* 259 F.3d at 1010 (quoting *Munson,* 467 U.S. at 956–57, 104 S.Ct. 2839).

Accordingly, the Court is satisfied that Plaintiff has standing. The Court, therefore, has jurisdiction to address the merits of Plaintiff's application for a preliminary injunction.

### B. Standard for Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must show "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir.1999). "These two alternatives represent extremes of a single continuum, rather than two separate tests." *Id.* (internal quotations omitted). "Thus, the greater the relative hardship to [a plaintiff], the less probability of success must be shown." *Id.*

### C. Analysis

#### 1. State or Federal Constitutional Law

As an initial matter, the Court must address the role of state law in this case. Here, Plaintiff challenges the validity of SLOMC § 5.76 on the basis of both the United States Constitution and the California Constitution. The Ninth Circuit follows the doctrine that federal courts "should avoid adjudication of federal constitutional claims when alternative state grounds are available." *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1391–92 (9th Cir.1994). "Where the state constitutional provisions offer more expansive protection than the federal constitution, [the Court] must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims." *Id.* at 1392. Thus, "[i]f the California Constitution provides 'independent support' for [Plaintiff's] claims, then 'there is no need for decision of the federal [constitutional] issue.'" *Carreras v. City of Anaheim,* 768 F.2d 1039, 1042–43 (9th Cir. 1985) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 294–95, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)) (applying California law).

The California Constitution provides, in pertinent part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. I, § 2; *compare* U.S. Const. Amend. 1 ("Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."). "The California Constitution, and California cases construing it, accords greater protection to the expression of free speech than does the United States Constitution." *Gonzales v. Superior Court (City of Santa Paula),* 180 Cal.App.3d 1116, 1122, 226 Cal.Rptr. 164 (1986) (citing *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 903, 907–910, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), among others). The state constitutional provisions are more protective and inclusive of the rights to free speech and press than the federal counterpart. *Id.* at 1123, 226 Cal.Rptr. 164, 180 Cal.App.3d 1116, 226 Cal.Rptr. 164.

While the free speech provisions differ, California courts draw upon both state and federal law for their state consti-

tutional analyses. *See U.C. Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Lab.*, 154 Cal.App.3d 1157, 1163, 201 Cal.Rptr. 837 (1984); *Gonzales*, 180 Cal.App.3d at 1123, 226 Cal. Rptr. 164 (federal law provides guidance). "Federal principles are relevant but not conclusive so long as federal rights are protected." *Robins*, 23 Cal.3d at 909, 153 Cal.Rptr. 854, 592 P.2d 341. "[W]here state law affords greater protection to expression of free speech than federal law, state law prevails." *Gonzales*, 180 Cal. App.3d at 1122, 226 Cal.Rptr. 164. These principles will guide the Court in its analysis of Plaintiff's constitutional challenges.

### 2. SLOMC Chapter 5.76 is an Impermissible Prior Restraint on Protected Expression in a Public Fora

### a. SLOMC Chapter 5.76 is a Prior Restraint

■ "A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials." *Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998) (citing *Near v. Minnesota*, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)).

■ Plaintiff argues, and the Court agrees, that SLOMC § 5.76 is an impermissible prior restraint on speech and other expressive activities because it (1) requires a permit to engage in expressive activities and (2) imposes a lengthy prefiling requirement before permit may be granted. *See* Motion at 9. SLOMC § 5.76.030 provides:

> ... no person shall conduct or cause to be conducted, participate or engage in, hold, manage, employ, permit or allow another to conduct a parade or local

special event, in, on or upon any city street, sidewalk, alley, park, way, public place or public property which is owned or controlled by the city without first having obtained a written permit from the city administrative officer pursuant to this chapter.

SLOMC § 5.76.030.

Clearly, SLOMC § 5.76 imposes a prior restraint on an applicant's ability to engage in protected expression, as the applicant's ability to participate in his or her expression of choice is contingent upon the City's approval of his or her permit application.

In addition, SLOMC § 5.76.040(A) provides that applications for a permit must be filed at least sixty days prior to the date that the permit is to become effective. Specifically, § 5.76.040(A) provides, "... applications shall be filed at least sixty days prior to the date that the permit is to become effective."[6] The Ninth Circuit has held that "[a]ll advance notice requirements tend to inhibit speech. The simple knowledge that one must inform the government of his desire to speak and must fill out appropriate forms and comply with applicable regulations discourages citizens from speaking freely." *City of Richmond*, 743 F.2d at 1355; *accord, Grossman*, 33 F.3d at 1206. "The delay inherent in advance notice requirements inhibits speech...The quantity of effective speech is limited." *Id.* The "procedural hurdle" of the advance notice requirement and the failure to provide objective standards for waiving the requirement restricts a speakers' ability to "respond to immediate issues," and impedes effective political speech. *Grossman*, 33 F.3d at 1206. Indeed, since *Freedman v. Maryland*, 380 U.S. 51, 58–61, 85 S.Ct. 734, 13 L.Ed.2d

---

6. As discussed more fully herein, the fact that the sixty day requirement may be waived for a First Amendment activity does not save this provision from being a "prior restraint," or an impermissible content-based provision.

649 (1965), the Supreme Court has held that the States may not require "persons to invoke unduly cumbersome and time-consuming procedures before they may exercise their constitutional right of expression." *Shuttlesworth*, 394 U.S. at 162, 89 S.Ct. 935 (Harlan, J., concurring). Therefore, the Court finds that SLOMC § 5.76 is an impermissible prior restraint as it (1) requires a permit to engage in expressive activities and (2) imposes a lengthy prefiling requirement before permit may be granted.

### b. The Ordinance Restricts Speech in Public Fora

■ Additionally, there is no doubt that the fora to which the ordinance applies— "a city street, sidewalk, alley, park, way, public place or public property which is owned or controlled by the city"—are public fora. *See* § 5.76.030. Section 5.76.030 requires a permit for any special event or parade in the City and defines "local special event" and "parade" in broad terms, which include a wide range of expressive activity on publicly owned or controlled property. SLOMC § 5.76.020(F),(H).[7] The vast majority of the activities subject to SLOMC § 5.76 are protected by the First Amendment. *See, e.g., United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999), *citing Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) ("march and other protest activities clearly constitute protected speech"); *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir.1996)(First Amendment

protects demonstrations, protest marches, picketing).

Public streets and sidewalks are clearly public fora. Regulation of speech in a traditional public forum is subject to the highest scrutiny. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir.1998). "In such places, which occupy a 'special position in terms of First Amendment protection,' *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), the government's ability to restrict expressive activity 'is very limited.'" *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). The City bears an exceptionally heavy "burden of justification" to restrict expressive activities in these fora. *NAACP v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir.1984).

### c. SLOMC § 5.76 is a Prior Restraint Subject to Strict Scrutiny

■ Because a "[p]rior restraint upon speech suppresses the precise freedom which the First Amendment sought to protect against abridgment," *Carroll v. Pres. & Commissioners of Princess Anne*, 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968), it "comes to this court 'bearing a heavy presumption against its constitutional validity.'" *Grossman*, 33 F.3d at 1204 (quoting *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 317, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980)). In spite of this "heavy presumption" against the validity of a prior restraint, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), the Court has recognized that government, in order to regu-

---

**7.** "Local special event" means and includes, but is not limited to, "promotional or fundraising activities, athletic or sporting events, live musical events, community celebrations and observances, or neighborhood activities such as block parties, picnics or dances, conducted on public property." SLOMC § 5.76.020(F). "Parade" means and includes "a parade, procession, march, pageant, re-

view ceremony or exhibition which is conducted in, on, upon, or along any portion of any public street, sidewalk or other property owned or controlled by the city, so as to impede, obstruct, impair or interfere with the free use of such public street, sidewalk or other public property of the city." SLOMC § 5.76.020(H).

late competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally. *Forsyth County,* 505 U.S. at 129, 112 S.Ct. 2395, *citing Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). Such a scheme, however, must meet certain constitutional requirements. It may not delegate overly broad licensing discretion to a government official. *Id.; see also* Discussion at II(C)(3)(b), *infra.* Further, any permit scheme controlling the time, place, and manner of First Amendment activity must be (1) content-neutral, (2) be narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of expression. *See Grossman,* 33 F.3d at 1205; *see also S.O.C., Inc. v. County of Clark,* 152 F.3d 1136, 1145 (9th Cir.1998); *Gonzales,* 180 Cal.App.3d at 1125, 226 Cal. Rptr. 164 (concerning both state and federal constitutions but quoting *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)). The failure to satisfy any single prong of this test invalidates the requirement. *Grossman,* 33 F.3d at 1205. Thus, any permit scheme regulating protected speech and advocacy activities in a public forum, "which is 'based upon the content of speech[,] requires strict scrutiny.'" *Burbridge v. Sampson,* 74 F.Supp.2d 940, 948 (C.D.Cal.1999), *citing U.C. Nuclear Weapons Labs,* 154 Cal.App.3d at 1170, 201 Cal. Rptr. 837 (concerning both state and federal constitutions but quoting *Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 535–36, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980)).[8]

### 3. SLOMC § 5.76 is Not a Reasonable Time, Place or Manner Restriction

### a. SLOMC § 5.76 is Content–Based

 Contrary to Defendant's contentions, SLOMC § 5.76 is obviously a content-based policy.[9] *See Foti,* 146 F.3d at regulating speech in a public forum and *Forsyth County* involved a content-based ordinance.

Defendant's argument that this Court should be guided by the *Thomas* Court, which Defendant asserts noted that "in the absence of a record of improper content-based decisions by a city official with discretionary authority to grant or deny a permit, a facial challenge is not sustainable where it is based on the mere *speculation* that such improper decisions will be made," is similarly unpersuasive. *See* Opp'n. at 7. Defendant further posits that it has shown that its decisions regarding whether to grant a permit have not been content-based. The holding in *Thomas* is more limited than Defendant suggests. In *Thomas,* the Supreme Court upheld a content-neutral ordinance that permitted government officials to deny an application based on specified standards that guided the official in his or her decision. The Supreme Court noted that decisions to deny or not to deny may be unconstitutional if they were based on favoritism. However, that abuse "must be dealt with if and when a pattern of unlawful favoritism appears, rather than by insisting upon a

---

8. The Court notes that once an ordinance is found to be content-based, it need not reach the second two prongs of the time, place and manner standard for government-imposed restrictions on protected speech—namely, whether the restriction is narrowly tailored to serve a significant government interest and whether it leave open ample alternative channels of communication. *See S.O.C.,* 152 F.3d at 1145. However, a content-based regulation may still pass constitutional muster if it is the "least restrictive means to further a compelling interest." *Id., citing Sable Communs. of Cal. v. F.C.C.,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).

9. Defendant argues that the ordinance is not content-based and that the Court should be guided by the recent Supreme Court holding in *Thomas v. Chicago Park Dist.,* —— U.S. ——, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002), which upheld the ordinance at issue in that case and limited the holding in *Forsyth County.* Defendant's contention that *Thomas* limited the holding of *Forsyth County* is inaccurate. The ordinances at issue in these cases were completely different—the *Thomas* Court addressed a content-neutral permit scheme

636 ("'As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.'") (citation omitted); *S.O.C.*, 152 F.3d at 1145 ("A speech restriction is content-neutral if it is 'justified without reference to the content of the regulated speech.'") (citation omitted); *see also Alternatives for California Women, Inc. v. County of Contra Costa*, 145 Cal.App.3d 436, 448, n. 7 & 449, 193 Cal.Rptr. 384 (1983) (ordinance is content-based if it "distinguishes between speech merely conveying information on the one hand and speech conveying information in conjunction with a request for funds or contributions on the other").

The Court finds that the San Luis Obispo ordinance is content-based because a City official must make a determination whether an activity proposed by an applicant is protected by the First Amendment when he or she (1) determines the amount of prior notice required for the permit application, (2) sets the amount of liability insurance required for an event and (3) sets the departmental service charge for an event. The regulation provides different, generally preferable, treatment for these prior notice, insurance and service charge rules for events that enjoy First Amendment protection.

degree of rigidity that is found in few legal arrangements." *Thomas,* —— U.S. at ——, 122 S.Ct. at 781. *Thomas* does not stand for the broad proposition that a party cannot challenge a time, place or manner ordinance unless a pattern of prohibitive implementation has been shown. Indeed, the Supreme Court in *Forsyth* held that "the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so." *Forsyth,* 505 U.S. at 133 n. 10, 112 S.Ct. 2395.

As stated above, SLOMC § 5.76, establishes a dual system, based upon whether the intended activity is deemed protected by the First Amendment. The advance notice requirement provision, SLOMC § 5.76.040(A) provides that permits for events that enjoy First Amendment protection may be filed in less than the sixty days prior to the proposed event required from all other applicants. To determine which advance notice requirement applies to a particular permit application, a city official must review the speech and decide whether the proposed permit activity is a First Amendment activity. This determination is clearly content-based.

SLOMC § 5.76's liability insurance provision also places it into the category of content-based ordinances. Section 5.76.090(B) provides, in pertinent part, that as a condition of any permit for non-expressive activity:

[t]he permitee shall procure and maintain full force and effect during the term of the permit a policy of insurance covering general liability and property damage *in an amount to be determined by the risk manager,* which policy includes the city, its boards, officers, agents and employees as named insureds ...

SLOMC § 5.76.090(B)(emphasis added). The section further provides that "nothing

Finally, Defendant urges this Court to adopt the broad reasoning of the Seventh Circuit in *Thomas v. Chicago Park Dist.,* 227 F.3d 921 (7th Cir.2000), *aff'd, Thomas v. Chicago Park Dist.,* —— U.S. ——, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). The Court finds that the Seventh Circuit *Thomas* decision does not alter its analysis in the instant matter. The ordinance at issue in the Seventh Circuit case was markedly different from than SLOMC § 5.76, the Supreme Court decision in *Thomas* did not address Judge Posner's reasoning on that issue, and the controlling authority in the Ninth Circuit requires a different result.

in this section shall be construed to apply to parades or local special events ... which enjoy First Amendment protection." SLOMC § 5.76.090(C). For events protected by the First Amendment, the applicant is given the choice of either providing insurance coverage, agreeing to indemnify the City for damages arising out of the sponsor's own acts or omissions or agreeing to redesign the event to respond to dangers to the public health and safety identified by the city administrative officer. *See* SLOMC § 5.76.090(C).

The California Court of Appeals found an insurance provision similar to the SLOMC provision unconstitutional. The ordinance at issue in *Long Beach Lesbian and Gay Pride, Inc., et al. v. City of Long Beach,* 14 Cal.App.4th 312, 312, 17 Cal.Rptr.2d 861 (1993), required a permitee to procure and maintain throughout the permit period a "liability insurance policy that would include the city, its boards, officers, agents and employees as named insureds which provided the coverages that the city manager determined to be necessary and adequate under the circumstances...." *Id.* at 337, 17 Cal.Rptr.2d 861. The permitee was also required to agree to defend and indemnify the City and its employees from all claims arising out of the permitee's alleged acts or omissions. The city manager had the discretion to waive the insurance requirement if he or she determined that an event did not present a substantial or significant public liability or property damage exposure for the city. In finding the insurance provision unconstitutional, the California Court of Appeals stated that "the insurance provision requires payment to a third party, of amounts it determines, using whatever factors it deems appropriate. Further, the permitee makes this compelled payment in exchange not for real costs incident to the activities it intends to undertake, but rather for contingencies that may never eventuate and indeed cannot necessarily be identified." *Long Beach,* 14 Cal.App.4th at 338, 17 Cal.Rptr.2d 861. The Court further noted that the insurance provision created "a system of charges subject to impact and adjustment based on 'content,' including the element of hostility anticipation. That, of course, is presumptively intolerable." *Id.* at 340, 17 Cal.Rptr.2d 861, *citing Forsyth County,* 505 U.S. 123, 112 S.Ct. 2395. Similarly, the fact that the City can determine the amount of insurance required indicates that the official may look to the content of the speech, including any element of anticipated hostility, to make his or her determination.

Section 5.76 also establishes a departmental services charge by which the City is paid for charges incurred in connection with the activities under the permit.[10] The amount of the charge and the method of collecting the fees is set by the City Council. The City administrator determines the type of activity and calculates the applicable service charge as set by the council.

While it is true that certain departmental service charges may be constitutional

---

10. Section 5.76.100 provides:

A. In addition to the payment of the nonrefundable permit application fee set by council resolution, a permitee shall pay the city for departmental services charges incurred in connection with or due to the permitee's activities under the permit. Additionally, if city property is destroyed or damaged by reason of permitee's use, event or activity, the permitee shall reimburse the city for the actual replacement or repair costs of the destroyed or damaged property.

B. The amount and the method of assessing and collecting fees and charges shall be set by council.

C. The city administrative officer shall determine the type of permitted parade, event or activity and calculate the applicable departmental services charges as set by council resolution.

under a properly drafted ordinance, SLOMC § 5.76.100 is facially unconstitutional. SLOMC § 5.76.100(C) is content-based because it charges the City administrator with the task of determining the type of activity and then calculating an applicable departmental service charge. The Supreme Court in *Forsyth County* struck down a similar provision because it required that the administrator, "in order to assess accurately the costs of security for parade participants ... examine the content of the message that is conveyed [citations omitted], estimate the response of others to that content, and judge the number of police necessary to meet that response." *Forsyth County*, 505 U.S. at 135, 112 S.Ct. 2395. The *Forsyth County* Court further held that the "fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its content. Those wishing to express views unpopular with the bottle thrower, for example, may have to pay more for their permit." *Id.* Similarly, the City of San Luis Obispo administrator must look to the content of the proposed activity to make his or her determination of what City resources will be required. Based on that determination, the City official prepares a budget which may not be revised and which must be paid by the applicant ten days before the event.[11] Thus, the determination of the amount of such service charge will turn on the administrator's view of the resources necessary, a view which may be based on the content of the message.

Defendant contends that the departmental service charge provision is constitutional because it was upheld by the California Court of Appeal in *Long Beach*, 14 Cal. App.4th at 336–37, 17 Cal.Rptr.2d 861. However, this provision of the Long Beach ordinance was permanently enjoined by this Court (apparently without opposition from the City of Long Beach) on September 10, 2001. *See* Civil Docket for the Central District of California, *People for Community Empowerment v. City of Long Beach*, No. CV–01–566, September 10, 2001.

For the reasons stated above, the Court finds that SLOMC § 5.76 is content-based. "Content-based regulations are presumptively unconstitutional. [citation omitted]. Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest." *S.O.C.*, 152 F.3d at 1145, *citing Sable Communs. of Cal. v. F.C.C.*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).

### b. SLOMC § 5.76, a Content–Based Regulation, is Not the Least Restrictive Means to Further a Compelling State Interest

 Defendant has not shown that SLOMC § 5.76 is the least restrictive means to further a compelling interest. Defendant identifies its "legitimate" interests[12] as the efficient coordination and facilitation of the use of public facilities and

---

**11.** Section 8 of the City Resolution (2001 Series) provides:

City staff will provide all event sponsors with a detailed budget of the amount of "Sponsor Paid Costs" the sponsor must actually pay as soon as possible after the special event application is received. This budget will become a fixed cost, **and will not be subject to revision.** Actual final costs are unlikely to be different from this budget, as it will be the basis for scheduling resources; and event sponsors will

not be surprised by any last minute costs changes. This practice will provide the City with reasonable cost recovery, while providing cost predictability to event sponsors. Payment in full of this cost is due to the City ten days before the event.

**12.** The Court notes that Defendant is required to show more than a "legitimate" government interest when seeking to defend an ordinance that is "content-based."

ensuring that First Amendment events are lawfully regulated.[13] *See* Hampian Decl. ¶ 8; Opp'n. at 5. While these interests may be substantial, Defendant does not explain how the content-based regulations are the least restrictive means to further these interests. Neither the advance notice requirement, the liability insurance requirement nor the departmental service charge requirement is the least restrictive means to further a compelling state interest.

The Ninth Circuit has found that although the City has a "substantial governmental interest in regulating parades, when large groups use public streets and disrupt traffic by causing major arteries to be closed and transportation to be rerouted," the City's "advance notice requirement is not the least restrictive means for achieving that end." *City of Richmond,* 743 F.2d at 1355 (internal citation omitted). Thus, in *City of Richmond,* the Ninth Circuit invalidated a 20–day advance notice requirement in a parade permit scheme because it severely inhibited protected expression. *Id.*

> It is well established that, to pass constitutional muster, a legislative prior restraint must contain certain procedural safeguards.... A decision to issue or deny a license must be made within a brief, specified and reasonably prompt period of time.... Promptness is essential because undue 'delay compel[s] the speaker's silence' while the applicant awaits a decision.... Unreasonable and indefinite delay is tantamount to the complete suppression of speech.

*Id.* at 1100–01 (citations omitted); *cf. Hillman v. Britton,* 111 Cal.App.3d 810, 819–21, 168 Cal.Rptr. 852 (1980) (discussing First Amendment and due process challenges) (ordinance governing permits for solicitation invalid on due process grounds because it provided no limitation on the time within which city officials must approve or deny application).

In addition, Defendant has not shown that the liability insurance requirement or the departmental service charge requirement are the least restrictive means to further the governmental interests advanced by Defendant. In *Forsyth County,* the United States Supreme Court found unconstitutional an ordinance that permitted the administrator to "assess a fee to cover 'the cost of necessary and reasonable protection of persons participating in or observing said ... activit[y].' " *Id.* at 134, 112 S.Ct. 2395. The Supreme Court found that the government interest claimed by the defendant—charging parade applicants fees based on administrative or security costs to raise revenue for police services— "[w]hile ... undoubtedly ... an important government responsibility ... does not justify a content-based permit fee." 505 U.S. at 136, 112 S.Ct. 2395. Similarly, while the City of San Luis Obispo clearly has a significant public interest in maintaining order, this interest does not permit it to charge applicants for that order.

Therefore, the Court finds that SLOMC § 5.76 is content-based and Plaintiff has failed to show that SLOMC § 5.76 is the least restrictive means to further a compelling interest.[14]

**13.** Section 5.76.010 describes the purpose of Chapter 5.76, the ordinance regulating parades and special events as: planning and carrying out special events "in a careful and consistent manner and that events which enjoy First Amendment protection under the United States Constitution are lawfully regulated. Moreover, the city must assure that the community does not assume a dispropor-

tionate share of the costs of parades and special events."

**14.** As the Court has found that SLOMC § 5.76 is content-based and not the least restrictive means to further a compelling interest, the Court need not determine whether SLOMC § 5.76 is narrowly tailored to serve a significant governmental interest or whether alternative means for communication have been

### 4. SLOMC § 5.76 is also Invalid because it Imbues the City with the Discretion to Confer Alternative Treatment on First Amendment Activity without Providing Guidelines for Such Determinations

A government regulation that allows arbitrary application is " 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.' " *Forsyth County*, 505 U.S. at 129, 112 S.Ct. 2395, *citing Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). "To curtail that risk, 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.' " *Id.* at 131, 112 S.Ct. 2395 *quoting Shuttlesworth*, 394 U.S. at 150–151, 89 S.Ct. 935. When a permit scheme is "completely discretionary, there is a danger that protected speech will be suppressed impermissibly because of the government official's . . . distaste for the content of the speech."

*Young*, 216 F.3d at 819, *citing FW/PBS v. City of Dallas*, 493 U.S. at 226, 110 S.Ct. 596.

■ The Court finds that SLOMC § 5.76 fails to provide the City officials with adequate, objective standards necessary to apply the time, place and manner restrictions established in that ordinance.[15] SLOMC § 5.76.040(C) vests city officials with unbridled discretion to determine whether a proposed activity falls within the protection of the First Amendment and with unlimited authority to decide the evidence the applicant must submit to establish an entitlement to First Amendment protection. Once this determination is made, a different set of rules apply to the First Amendment activity. *See* prior notice requirements (SLOMC § 5.76.040(A) vs. (B), insurance liability requirements) (SLOMC § 5.76.090(B) vs. (C) and departmental service charge requirements) (SLOMC § 5.76.100).

The City administrator is vested with unfettered discretion to determine whether good cause exists to grant a permit submitted after the deadlines established by the ordinance.[16] SLOMC § 5.76.040(D). The ordinance does not describe any stan-

provided by the City. However, even if the Court were to engage in an analysis of whether SLOMC § 5.76 is narrowly tailored to serve a significant government interest, the Court would find that the Defendant has not made that showing.

15. Defendant argues that ample standards are built into the regulation because SLOMC § 5.76 "requires the City administrator to grant favored status to **all** applicants whose speech is protected by the First Amendment. The official has no discretionary authority to vary his decision based on the specific content of the expression." *See* Opp'n. at 8. Defendant also argues that the Court must look at both the City's "authoritative construction of its own laws and at the record of implementation of such laws," to determine whether discretionary authority is impermissibly vague. *See* Opp'n. at 8. Defendant's cite to *Forsyth*, 505 U.S. at 131, 112 S.Ct. 2395 as support for this proposition is inaccurate. The Supreme Court in *Forsyth* specifically held that:

Facial attacks on the discretion granted a decisionmaker are not dependent on the facts surrounding any particular permit decision. [Citation.] "It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." [Citation]. Accordingly, the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decision maker rests not on whether the administrator has exercised his discretion in an content-based manner, but whether there is anything in the ordinance preventing him from doing so.

*Forsyth*, 505 U.S. at 133 n. 10, 112 S.Ct. 2395.

16. Specifically, SLOMC § 5.76.040(D) states: Each application shall be accompanied by a nonrefundable permit application fee in an amount established from time to time by reso-

dards that must be followed in making the determination of whether to grant an extension that constitutes the good cause necessary to grant an extension.[17] Moreover, no definitions or guidelines exist for making the decision of whether an applicant will be subject to the sixty-day advance notice requirement established in SLOMC § 5.76.040(A).

The Court finds that the Departmental Service Charge also imbues the City with unguided discretion. In this provision, SLOMC § 5.76.100 again grants the City administrator unfettered discretion to characterize the type of activity for which the permit is sought, as well as the fee that

should be charged for that activity. No standard or guidance is provided to determine what constitutes departmental services for which a charge is appropriate nor what the appropriate fee should be. Additionally, no standards limit the discretion to assign personnel and resources to events based on consideration of impermissible criteria, such as the content of the permitees' speech, the identity of the speaker, or acts of third parties acting without prior approval of the permit holders. Thus, the determination of the amount of such service charge is not narrowly drawn with reasonable and definite standards to guide the administrator.[18]

---

lution of the city council. The city administrative officer shall have the authority, if good cause is shown and the nature of the application reasonably and feasibly lends itself to expedited processing, to consider, grant or deny any application for a permit which is filed later than the time prescribed in this section.

**17.** In support of the discretion provided by SLOMC § 5.76.040(A) and (C), Defendant argues that "there is nothing...improper in examining an oral or written expression to determine if a particular rule of law applies to it." *See* Opp'n at 7. Defendant cites to *Hill*, 530 U.S. at 720, 120 S.Ct. 2480 as support for this proposition and notes that the Supreme Court in *Hill* upheld a statute despite the fact that an official could be forced to examine speech to determine applicability of the ordinance. *Hill*, however, is completely inapposite to the instant case as the statute in *Hill* was not a "prior restraint."

**18.** Defendant argues that Plaintiff's reliance on *Forsyth* as support for its attack on the departmental service charge is misplaced and that the Court should be persuaded by *Cox v. State of New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), in which the Supreme Court upheld a licensing fee provision in a City ordinance regulating parades and processions. However, the Court's findings are not altered by *Cox*. In *Cox*, the Supreme Court, in finding a licensing fee provision constitutional, was careful to note that "there was no evidence that the statute has

been administered otherwise than in the fair and non-discriminatory manner which the state court has construed it to require." Here, unlike in *Cox*, conflicting testimony has been presented regarding whether SLOMC § 5.76 has been administered in a fair and non-discriminatory way. *See* Anderson Decl. ¶ 5, stating that "[c]ity officials told me that they were not in support of the parade and the permit would not be approved for 2002," and Hampian Decl. ¶ 5 "[a]t no time did I ever tell Ms. Anderson or any other parade organizer that I had made a decision not to grant a parade permit for 2002." Thus, the factual situation presented in *Cox* is distinguishable from that presented in the instant matter. *See also Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 156, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)(noting that the *Cox* court, in affirming the state court judgment, was "careful to emphasize ... '[t]here is no evidence that the statute has been administered otherwise than in the fair and non-discriminatory manner which the state court has construed it to require' "). In addition, as the Court noted in Section II(C)(4) n. 15, *infra*, where it quotes *Forsyth*, 505 U.S. at 133 n. 10, 112 S.Ct. 2395 as follows:

[t]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decision maker rests not on whether the administrator has exercised his discretion in an content-based manner, but whether there is anything in the ordinance preventing him from doing so.

A content-neutral departmental service charge was recently upheld by the Eleventh Circuit in *Coalition for the Abolition of Marijuana Prohibition (CAMP) v. City of Atlanta*, 219 F.3d 1301 (11th Cir.2000). In *CAMP*, the Eleventh Circuit found that the departmental service charge provision of the City ordinance was constitutional because it provided an express method for calculating costs and excluded from its cost assessment any time incurred by the City's special event coordinator, police officers and any person at the rank of bureau director or higher. The ordinance expressly provided that,

> no applicant for, or recipient of, an outdoor festival permit shall be required to provide for, or pay the cost of, public safety personnel necessary to provide for the protection of a festival and its attendees from hostile members of the public or counter-demonstrators, or for traffic control, or for general law enforcement in the vicinity of the festival.

*CAMP*, 219 F.3d at 1322. This provision, the Eleventh Circuit noted, avoided the problem created by the ordinance which the Supreme Court found to be facially unconstitutional in *Forsyth*. SLOMC § 5.76, as it expressly charges an applicant for the costs of public safety personnel to provide protection during the permitted event and does not provide a standard method for calculating costs, does not do so. Additionally, the ordinance in *CAMP* distinguished between events solely on the basis of physical attributes, such as whether stages, barricades or other temporary structures would be required. The ordinance did not distinguish on the basis of content.

Defendant argues that SLOMC § 5.76.090(B) is valid because an applicant

enjoying First Amendment activity is given the choice of either providing insurance coverage, agreeing to indemnify the City or redesigning the event. *See* Opp'n. at 9. However, this Court has determined that exempting First Amendment activity from an insurance requirement, when the determination of the First Amendment applicability is left to the discretion of the City, does not save a liability provision from a constitutional challenge. After the Court's ruling in *Long Beach*, 14 Cal.App.4th, 312, 17 Cal.Rptr.2d 861, the ordinance at issue in that case was amended to include an exception for parades and local special events which enjoy First Amendment protection under the United States Constitution. This Court found that exception facially invalid because it failed to provide adequate standards for the administrator to apply in making the determination of whether an event was protected by the First Amendment. *See* Reply, Exh. B, *People for Community Empowerment v. City of Long Beach*, CV 01–5666 (C.D.Cal. July 6, 2001) (Order granting temporary restraining order prohibiting the City of Long Beach from enforcing the ordinance).[19]

### 5. Irreparable Injury

Having already demonstrated Plaintiff's likelihood of success on the merits of its claim that SLOMC § 5.76 is a content-based ordinance that does not employ the least restrictive means to serve a compelling government interest, a preliminary injunction with respect to those claims will be granted if Plaintiff also shows the possibly of irreparable injury if relief is not granted. It appears clear to the Court that Plaintiff has shown the possibility of irreparable injury. "The loss

19. The Court notes that in *People for Community Empowerment v. City of Long Beach,* the City of Long Beach did not oppose the application for a preliminary injunction and the court subsequently issued the preliminary injunction enjoining the City of Long Beach from enforcing the code at issue. *See* Civil Docket No. CV–01–566, September 10, 2001.

of First Amendment [and state constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." [20] *S.O.C.,* 152 F.3d at 1148.

### III. Conclusion

For all of the foregoing reasons, the Court will GRANT Plaintiff's application for a preliminary injunction. Plaintiff is ORDERED to file and serve (personally or via facsimile) a Proposed Injunction, as well as Findings of Fact and Conclusions of Law consistent with this opinion by Wednesday, February 6, 2002.[21] Defendant should submit any objections as to form by Thursday, February 7, 2002. The Court will issue its preliminary injunction upon receipt and consideration of the parties' papers.

**SO ORDERED.**

---

**20.** Defendant argues that it will suffer irreparable injury if the preliminary injunction issues because such an injunction would constrain its ability to effectively and efficiently manage its public facilities. The Court finds that while the issuance of the instant preliminary injunction may indeed impact the City, the irreparable injury to Plaintiff outweighs that of Defendant.

**21.** In addition to filing the documents referenced above, Plaintiff is ORDERED to submit to the Court a copy of those documents on disk formatted for Wordperfect 7.0.